COMMISSIONER OF CORPORATIONS AND TAXATION *vs.* HATTIE F. HORNBLOWER.

SAME *vs.* HENRY HORNBLOWER.

SAME *vs.* EDWARD L. GEARY.

Suffolk. November 3, 1931. — March 29, 1932.

Present: RUGG, C.J., PIERCE, WAIT, SANDERSON, & FIELD, JJ.

*Tax,* On income. *Corporation,* Dividend, Sale of assets.

A Maine corporation made a contract in writing with another Maine corporation whereby the first corporation agreed to sell to the second its "entire property and assets," excepting an amount sufficient to pay a dividend of eighty-seven and one half cents on its stock, for a number of shares of the purchaser corporation, called the "purchase price," equal to the number of shares of stock held by the stockholders of the seller corporation. The shares thus "constituting the purchase price" were to be delivered to the seller corporation, in such names and amounts as should be specified by the seller corporation, to or for the account of its stockholders *pro rata* to their respective holdings of the outstanding shares of its capital stock. The seller corporation also agreed "promptly to make distribution to its stockholders of the purchase price herein against surrender by the stockholders of certificates for the outstanding shares of the Seller properly endorsed; and . . . at the request of the Purchaser to transfer and deliver to the Purchaser as a further assurance and muniment of title certificates for the entire outstanding stock of the Seller so surrendered in exchange." Directors and stockholders approved and ratified the contract and the sale was consummated. Thereafter the seller corporation distributed the shares of the purchaser corporation to its stockholders *pro rata* and declared a cash dividend of eighty-seven and one half cents, paid on surrender by the stockholders of their shares duly indorsed; and, upon receipt of such shares, delivered them to the purchaser corporation. Upon the issue being raised, what income tax was assessable upon Massachusetts stockholders of the seller corporation, it was *held,* that

(1) The issue must be determined by the nature of the transaction as a whole, which was to be ascertained from the substance of the things done, and not alone, or chiefly, from the legal formalities in which that substance was cloaked;

(2) The contract was between the two corporations: there was no sale by the stockholders of the seller corporation to the purchaser corporation;

(3) The circumstance that there was no formal vote to liquidate the seller corporation was not decisive and did not affect the essentials of the transaction;

(4) The transaction in its entirety was in substance and effect the declaration by the seller corporation of a dividend in liquidation and not a sale by its stockholders of their stock;

(5) The Massachusetts stockholders received dividends in stock of the purchaser corporation taxable at the rate of six per cent under G. L. c. 62, § 1 (b).

APPEALS, filed in the Supreme Judicial Court for the county of Suffolk on May 27, 1931, under G. L. c. 58A, § 13, in the amended form appearing in St. 1931, c. 218, § 1, by the commissioner of corporations and taxation from a decision by the Board of Tax Appeals granting petitions for partial abatement of an income tax as assessed upon them.

Before the board, the petitions were heard upon an agreed statement of facts. Material facts are stated in the opinion. Both corporations there described were incorporated in the State of Maine. The board decided that, as a result of the transactions described in the opinion, the petitioners therein received, "not dividends paid in stock taxable at six per cent, but gains on which they should have been taxed at three per cent." The commissioner appealed.

*C. F. Lovejoy,* Assistant Attorney General, for the commissioner of corporations and taxation.

*W. T. Snow,* for the taxpayers.

RUGG, C.J. These are proceedings pursuant to G. L. c. 58A, inserted in General Laws by St. 1930, c. 416, § 1, as amended by St. 1931, c. 218, § 1, whereby each of the several taxpayers seeks an abatement of an income tax. The controversy arises on these facts, which are identical in each case except as to amounts: The taxpayers were stockholders in a Maine corporation known as the Bingham Mines Company. That corporation, called in the contract the seller, in 1929 entered into a contract in writing with the United States Smelting, Refining & Mining Company, therein called the purchaser, whereby the seller

agreed to sell to the purchaser its "entire property and assets . . . as a going concern . . . subject to its liabilities" (reserving only $43,750, sufficient to pay a cash dividend of eighty-seven and one half cents on its stock), "In consideration of fifty thousand shares, par value fifty dollars each, of the Common capital stock of the Purchaser" and its covenant to assume and pay all debts and liabilities of the seller save only its liability to its own stockholders. "Delivery of the purchase price" was to be "against delivery to the Purchaser of good and sufficient deeds and transfers . . . of the entire property and assets" to be sold. These shares of common stock "constituting the purchase price" were to be delivered to the seller in such names and amounts as should be specified by the seller to or for account of the stockholders of the seller *pro rata* to their respective holdings of the outstanding fifty thousand shares of the capital stock of the seller, "the consideration for this merger being in effect one share of the stock of the Purchaser for each outstanding share of the stock of the Seller." A further provision was in these words: "The Seller agrees promptly to make distribution to its stockholders of the purchase price herein against surrender by the stockholders of certificates for the outstanding shares of the Seller properly endorsed; and agrees at the request of the Purchaser to transfer and deliver to the Purchaser as a further assurance and muniment of title certificates for the entire outstanding stock of the Seller so surrendered in exchange." The contract was duly approved and ratified and appropriate votes of directors and stockholders were adopted to that end. The vote of the stockholders of the seller was to "authorize and consent to the sale of its entire property and assets" to the Smelting company upon the terms of the contract which was presented and read at the meeting. The sale was consummated in 1929. The Bingham company received certificates for the shares of stock in the Smelting company made out in the names specified, distributed the same to its stockholders, declared and paid to its stockholders a cash dividend of eighty-seven and one half cents per share

on surrender of their certificates of stock in it indorsed in blank, and delivered these certificates to the Smelting company. Each of the taxpayers made a profit out of this transaction, the market value of the stock received in the Smelting company being considerably in excess of its par value and in excess of the cost to each of the stock in the Bingham company.

The question to be decided is whether the income thus received was a dividend on shares in a corporation taxable at the rate of six per cent, or a gain from a purchase and sale of intangible personal property taxable at the rate of three per cent. The governing statutes are these sections of G. L. c. 62, whereby taxes are imposed upon income "received by any inhabitant of the commonwealth during the preceding calendar year": § 1, as most recently amended by St. 1926, c. 160: "Income of the classes described in subsections (a), (b), (c) and (e) . . . shall be taxed at the rate of six per cent per annum. . . . (b) Dividends, other than stock dividends paid in new stock of the company issuing the same, on shares in all corporations . . . organized under the laws of any state or nation other than this commonwealth . . ." (with exceptions not here material). § 5, as amended by St. 1928, c. 217, § 1 (see now St. 1931, c. 435): "Income of the following classes . . . shall be taxed as follows: . . . (c) The excess of the gains over the losses received by the taxpayer from purchases or sales of intangible personal property . . . shall be taxed at the rate of three per cent per annum . . . ."

The nature of this transaction as a whole with reference to the taxpayers as stockholders in the Bingham company determines their liability to taxation on income. The nature of this transaction must be ascertained from the substance of the things done, and not alone, or chiefly, from the legal formalities in which that substance is cloaked. If the transaction had been directly between the stockholders of the Bingham company as sellers, on the one side, who pursuant to the offer had transferred their shares of stock directly to the Smelting company as purchaser, on the other side, in return for shares in the latter corpora-

tion, a sale would have resulted and those stockholders would have been subject to a tax under G. L. c. 62, § 5 (c). *Osgood* v. *Tax Commissioner*, 235 Mass. 88. *Stone* v. *Tax Commissioner*, 235 Mass. 93. The contract here in issue was not of that kind. The contract was made directly between the two corporations. The stockholders of the Bingham company were not parties to it. The subject matter of the contract was the "entire property and assets" of the Bingham company as a going concern subject to its liabilities with specified reservation of cash. That was the thing sold. The Bingham company was the seller. The Smelting company was the purchaser. The price to be paid by the purchaser was a certain number of shares of its stock and the delivery of its covenant to assume and pay all the debts and liabilities of the Bingham company, except only its liabilities to its stockholders. This exception serves to emphasize the entire freedom of the purchaser from any relation to the stockholders of the seller. That purchase price was to be delivered to the Bingham company as the seller. It was an incident of this purchase and sale that "at the request of the Purchaser . . . as a further assurance and muniment of title" the seller should deliver to the purchaser the certificates of stock for the entire outstanding stock of the seller properly indorsed. This was not a main part of the contract. The delivery of these certificates was to be only "at the request" of the Smelting company. If no such request were made, no such delivery would be required. In any event, such delivery was to be subsequent in time to the passage of title to the "entire property and assets" of the Bingham company to the Smelting company and the payment by the latter of the whole consideration for the sale. Such delivery could occur only after there had elapsed sufficient time to enable the Bingham company to gather from its stockholders their certificates of stock properly indorsed. Apparently, failure by the Bingham company to comply with the request, if such request were made by the Smelting company, for such delivery, would not affect or impair the validity of the completed sale. Failure or refusal by the

Smelting company to carry out its part of the contract would have given no right of action to the individual stockholders of the Bingham company. *Pike* v. *Anglo-South American Trust Co.* 267 Mass. 130. Right of action for such breach of contract would have vested in the Bingham company alone. The surrender of their certificates of stock by the stockholders of the Bingham company as a condition of receipt by them of certificates of stock in the Smelting company does not convert the "distribution to its [the Bingham company's] stockholders of the purchase price" for the sale of all its assets into a sale by such stockholders of their stock for Smelting company stock, or into an exchange of such stock for value. Neither does it constitute a part of the consideration of the sale of its assets by the Bingham company. The transaction was a sale of the entire property of the Bingham company. Thereby it dispossessed itself of the means of doing business. If the consideration for such sale had been transferred in cash into the treasury of the Bingham company, and then been ·distributed to its stockholders, there would have been unquestionably a dividend. The delivery of certificates of· shares of stock in the Smelting company directly to the Bingham company in form appropriate for delivery by it to its stockholders was voted by the stockholders and directors of the Bingham company. They had the authority to pass such votes. It was simply a short cut for accomplishing the distribution among such stockholders of the proceeds of a sale of all the assets of the corporation in which they held stock. The circumstance that there was no formal vote to liquidate the Bingham company is not decisive and does not affect the essentials of the transaction. That corporation disposed of everything owned by it by declaring a dividend of its cash, and by selling and delivering all its other assets in return for stock distributed directly to its stockholders. Thereafter, even without liquidation, the Bingham company constituted simply the empty shell of a corporation. The handing over by the Bingham company of certificates for its shares of stock to the Smelting company was not the transfer of a vital security or live

property, but merely a support against some remote possible flaw in the title to all its assets, save the cash of the Bingham company, theretofore sold and delivered to the Smelting company. The transaction in its entirety was in substance and effect the declaration of a dividend in liquidation and not a sale of the stock. *Pennsylvania Iron Works Co.* v. *Mackenzie*, 190 Mass. 61, 63. *Wilder* v. *Tax Commissioner*, 234 Mass. 470, 474. *Calkins* v. *Wire Hardware Co.* 267 Mass. 52, 59. *Gray* v. *Hemenway*, 268 Mass. 515, 516, 520. *Anderson* v. *Bean*, 272 Mass. 432, 441. *Rockefeller* v. *United States*, 257 U. S. 176, 182. The case at bar falls within the principle of cases like *Boston Safe Deposit & Trust Co.* v. *Commissioner of Corporations & Taxation*, 262 Mass. 1; *Follett* v. *Commissioner of Corporations & Taxation*, 267 Mass. 115; *Boston Safe Deposit & Trust Co.* v. *Commissioner of Corporations & Taxation*, 273 Mass. 187.

The result, in our opinion, is that the taxpayers have received dividends taxable at the rate of six per cent under G. L. c. 62, § 1 (b). There is no contention that the tax was not correctly computed by the commissioner of corporations and taxation on this footing. It follows that the taxpayers are not entitled to abatements and their several petitions to that end are to be dismissed.

*So ordered.*