ARTHUR H. WELLMAN, executor, *vs.* COMMISSIONER OF CORPORATIONS AND TAXATION.

Suffolk.    November 14, 15, 1934. — January 5, 1935.

Present: RUGG, C.J., CROSBY, PIERCE, DONAHUE, & LUMMUS, JJ.

*Tax,* On income. *Constitutional Law,* Due process of law. *Board of Tax Appeals.*

A corporation agreed with a second corporation to convey to it all its assets subject to its obligations, which the second corporation agreed to assume, and to take necessary action for its own corporate dissolution; and the second corporation agreed to issue to each stockholder of the first, "upon the order of" the first, shares of stock of the second equal in number to two and one half times the number of shares of the first held by the stockholder and surrendered by him to the first for cancellation; but, if any stockholder of the first corporation should object to such sale and conveyance, the second corporation agreed to pay him the value of his shares, duly appraised "in the manner provided by law," or to provide the first corporation with funds so to pay him. There was no vote of the first corporation to declare a dividend payable in stock of the second corporation. The conveyance was made by the first corporation. It employed a bank to receive certificates of its stock from its stockholders, to procure stock of the second corporation and to deliver the appropriate amounts thereof to such stockholders; and its stockholders were notified to that effect. Certificates of stock of the second corporation were delivered to all stockholders of the first corporation who then surrendered their shares. The value of the shares of the second corporation so received by a stockholder of the first exceeded the value of the shares of the first surrendered by him. At a time when not all stockholders of the first corporation had so surrendered and while the first corporation was still undissolved, there was levied upon one of its stockholders who had received shares in the second corporation an income tax under G. L. (Ter. Ed.) c. 62, § 1 (b). *Held,* that

(1) There was no exchange between the stockholders of the first corporation and the second corporation of shares in the respective corporations but a sale by the first corporation of all its assets in

consideration of stock of the second corporation which was to be distributed to the stockholders of the first corporation;

(2) Disregarding the ·form of the transaction, the distribution to stockholders of the first corporation was, in the circumstances, a dividend resulting from stock ownership and was taxable under G. L. (Ter. Ed.) c. 62, § 1 (b);

(3) There was no violation of the Fourteenth Amendment to the Constitution of the United States by the assessment of such tax;

˙(4) Since the assessment was made under said § 1 (b), the exemption in § 5 (c) of the same chapter had no application;

(5) Said §.5 (c) had no application for the further reason that the shares of the second corporation clearly represented an interest in assets entirely different from those represented by the shares of the first corporation.

Upon an appeal to this court by the taxpayer from a decision by the Board of Tax Appeals denying a petition to abate the tax assessed as above described, a contention by the taxpayer that, it appearing from agreed facts that the commissioner had levied no tax on former stockholders of the second corporation by reason of gains· resulting from the merger of the two corporations, a construction of the statute was disclosed which was violative of c. 1, § 1, art. 4 of the Constitution of the Commonwealth and of art. 44 of the amendments thereto, was not open because the record showed that that question had not been raised before the board.


APPEAL, filed in the Supreme Judicial Court for the county of Suffolk on June 15, 1934, by a taxpayer, from a decision by the Board of Tax Appeals disallowing a petition for abatement of an income tax.

Before the board, the petition was heard upon an agreed statement of facts. Material facts are described in the opinion.

*F. J. Carney,* (*D. A. Lynch & F. A. Lynch* with him,) for the taxpayer.

*C. F. Lovejoy,* Assistant Attorney General, for the Commissioner of Corporations and Taxation.

PIERCE, J.  All action in connection with this petition for abatement of the tax, the appeal to the Board of Tax Appeals, and the appeal from the decision of the Board of Tax Appeals to this court was taken by the special administrators of the estate of Nellie P. Carter. On July 24, 1934, the will of the said Nellie P. Carter was allowed and Arthur H. Wellman was appointed executor. Subsequently, on September 19, 1934, a motion to substitute Arthur H.

Wellman, executor, as the appellant in place of said special administrators was allowed. Herein the special administrators will be referred to as the appellant.

This is a proceeding for the abatement of an income tax assessed to said Nellie P. Carter, now deceased. The present appeal is from a decision of the Board of Tax Appeals, which sustained a ruling of the tax commissioner that the tax was properly assessed. The parties are in substantial agreement as to the material facts, which, in substance, are as follows: On or about August 1, 1931, the decedent owned seven thousand three hundred twenty-eight shares of stock of the Vacuum Oil Company, a New York corporation, hereinafter called the Vacuum. Vacuum and the Standard Oil Company of New York entered into a contract, dated January 10, 1930, as amended by supplementary agreements on April 30, 1930, July 25, 1930, April 8, 1931, and July 3, 1931. This contract, set out in the record, was made subject to the approval of the stockholders of each corporation. It provided that the Standard Oil Company of New York, upon such approval, would change its name from Standard Oil Company of New York to Socony-Vacuum Corporation (hereinafter called "Socony-Vacuum"), and that said company would increase its authorized capital stock to an amount adequate for the purposes of the contract.

The contract continued: "3. Thereupon Vacuum will sell and convey to Socony-Vacuum all of its property, rights, privileges and franchises, wheresoever situated . . . such sale and conveyance to be made subject to all liens, contracts, liabilities and obligations of Vacuum of every kind and character, all of which liens, contracts, obligations and liabilities Socony-Vacuum will assume, perform and satisfy, and Vacuum will also take the necessary action for its dissolution and the winding-up of its affairs under the laws of the State of New York. 4. Thereupon, Socony-Vacuum will issue and deliver to each of the stockholders of Vacuum, upon the order of Vacuum, shares of the capital stock of Socony-Vacuum equal in number to two and one-half times the number of shares of the capital stock

of Vacuum held by such stockholder and surrendered to Vacuum for cancellation, Provided, however, that if any stockholder of Vacuum duly object to such sale and conveyance hereinbefore provided for and the shares of such stockholder of stock in Vacuum are duly appraised, in the manner provided by law, no shares of capital stock of Socony-Vacuum shall be issued and delivered to such stockholder but Socony-Vacuum shall pay, or provide Vacuum with funds to pay such stockholder the amount of such appraisal . . . ." Clause 5 provided that the sale and conveyance of the assets of Vacuum should be consummated on the "closing date," while clause 6 provided that the transfer of Socony-Vacuum stock was to be made "as soon as practicable."

The contract was approved by the stockholders of both corporations at special meetings held July 30, 1931, and authority was given to the proper officers of each corporation to take appropriate action to carry out the terms of the contract. A meeting of the directors of Vacuum was held on July 31, at which votes were passed giving similar authority to the officers of that corporation. There was no vote of the directors or stockholders of Vacuum which in form purported to declare a dividend in the stock of Socony-Vacuum, or to do otherwise with respect to the subject matter of the contract than to authorize action to carry it into effect. The contract was performed according to its terms and conditions. The property of Vacuum was conveyed to Socony-Vacuum on July 31, 1931.

On August 1, 1931, the directors of Vacuum employed the City Bank Farmers Trust Company of New York to act as a depositary for Vacuum, "with instructions to receive from stockholders certificates of stock surrendered for cancellation, to make out certificate requisitions for the issuance of stock of Socony-Vacuum and transmit them to that company, and to receive the certificates for stock so issued and checks for cash adjustment and deliver them to the persons entitled to them; and the stockholders of Vacuum were notified that they should deposit their certificates with the depositary and that as soon as practicable the certifi-

cates of stock of Socony-Vacuum and the cash to which they were entitled in lieu of fractional shares would be issued and delivered to them. Certificates of Socony-Vacuum stock have been issued and delivered to all Vacuum stockholders who have surrendered their shares, in the manner described in the instructions to the depositary. Some have not surrendered their shares and certificates have not been delivered to them. The certificate of dissolution of Vacuum has not yet been filed."

Upon the execution of the contract the decedent surrendered seven thousand three hundred twenty-eight Vacuum shares and received directly from the depositary eighteen thousand three hundred twenty shares of the Socony-Vacuum stock. At the time of the transfer the par value of the Vacuum stock was $25 per share, a total of $183,200. At this time the market value of the Socony-Vacuum stock was $18 per share. The total market value of the Socony-Vacuum stock received by the decedent for her Vacuum stock was $329,760, or an excess of $146,560 over the par value of her Vacuum stock. On the same date the decedent held certificates for seventeen thousand one hundred seventy-seven shares of stock of the Standard Oil Company of New York which had a fair market value of $18 per share, and received in exchange certificate for the same number of shares of Socony-Vacuum stock.

The tax here complained of was assessed upon the theory that the shares received by the decedent constituted a dividend in liquidation, taxable to the extent of the difference between the value of the new stock received and the par value of the surrendered stock, the difference being computed at the rate of $20 for each Vacuum share surrendered. There is no controversy as to the computation of the amount of the tax. The controversy is whether the transaction resulted in a dividend to the decedent, taxable under G. L. (Ter. Ed.) c. 62, § 1 (b); or whether the transaction was a sale or exchange and taxable under § 5 (c); or whether it falls within that part of the latter section which prohibits the tax under the section from being assessed when in corporate reorganizations stock taken in exchange

represents the same interest in the same assets. G. L. (Ter. Ed.) c. 62, § 1, reads: "Income of the classes described in subsections (*a*), (*b*), (*c*) and (*e*) received by any inhabitant of the commonwealth during the preceding calendar year, shall be taxed at the rate of six per cent per annum. . . . (*b*) Dividends, other than stock dividends paid in new stock of the company issuing the same, on shares in all corporations and joint stock companies organized under the laws of any state or nation other than this commonwealth, except banks which are subject to taxation under section two of chapter sixty-three, and except such foreign corporations as are subject to a tax upon their franchises payable to the commonwealth under section fifty-eight of chapter sixty-three." Section 5 reads, in part: "Income of the following classes received by any inhabitant of the commonwealth during the preceding calendar year shall be taxed as follows: . . . (*c*) The excess of the gains over the losses received by the taxpayer from purchases or sales of intangible personal property, whether or not said taxpayer is engaged in the business of dealing in such property, shall be taxed at the rate of three per cent per annum. . . . If, in any exchange of shares upon the reorganization of one or more corporations or of one or more partnerships, associations or trusts, the beneficial interest in which is represented by transferable shares, the new shares received in exchange for the shares surrendered represent the same interest in the same assets, no gain or loss shall be deemed to accrue from the transaction until a sale or further exchange of such new shares is made."

The main question centers about the nature of the transaction. If the distribution of the stock is to be considered as a dividend in liquidation, it is impliedly admitted that the shares are taxable under § 1 (b). *Follett* v. *Commissioner of Corporations & Taxation,* 267 Mass. 115, 119–120. If the Vacuum company's assets had increased in value, and upon dissolution a cash dividend had been paid in liquidation, that dividend would have been taxable in so far as it represented accumulated and undistributed profits.

*Moore* v. *Tax Commissioner*, 237 Mass. 574, 576. Similarly, if the Vacuum company had transferred all its assets to Socony-Vacuum, receiving in return stock in the latter which it later divided upon dissolution, the distribution would have been considered as a dividend in liquidation and taxable to the extent that it represented a distribution of profits. *Boston Safe Deposit & Trust Co.* v. *Commissioner of Corporations & Taxation*, 262 Mass. 1, 5. *United States* v. *Phellis*, 257 U. S. 156, 170. If Socony-Vacuum had offered directly to stockholders of Vacuum its shares in exchange for shares of Vacuum and the stockholders of Vacuum had accepted the offer, the transaction would fall within the section (§ 5 [c]) taxing the excess of gains over losses resulting from purchases or sales by the taxpayer. *Osgood* v. *Tax Commissioner*, 235 Mass. 88, 91. *Stone* v. *Tax Commissioner*, 235 Mass. 93, 95.

The case of *Commissioner of Corporations & Taxation* v. *Hornblower*, 278 Mass. 557, is contended by the appellee to be indistinguishable from the instant case. It is contended by the appellant that the *Hornblower* case is distinguishable in that in the *Hornblower* case one corporation went out of business, while in the instant case there was a merger of the two companies, each of which intended to remain in business. In that case the theory of the court was that there was a sale between the two corporations and that the seller, having disposed of all its assets, was, by distributing the consideration received, declaring a dividend in liquidation, although no such dividend was formally declared. Similar transactions have been held to result in taxable income by the Supreme Court of the United States under the tax laws of 1916. *Cullinan* v. *Walker*, 262 U. S. 134, 137. *Marr* v. *United States*, 268 U. S. 536, 540. See *Weiss* v. *Stearn*, 265 U. S. 242, 254. The fact that in the instant case Socony-Vacuum was to transfer its stock directly to stockholders of Vacuum rather than to Vacuum for distribution by the latter to its stockholders, although a point of distinction from the *Hornblower* case, does not seem to be such a material distinction as to require a different result.

*Rockefeller* v. *United States*, 257 U. S. 176, 182. It is to be noted that the transfers to the stockholders of Vacuum of the Socony-Vacuum stock were to be made according to the contract "upon the order of Vacuum" and that they were in fact issued in accordance with certificate requisitions made out by the depositary employed by Vacuum and were delivered to the depositary. It is to be noted also that the Socony-Vacuum stock was to be delivered only to assenting stockholders who surrendered their shares of Vacuum, provision being made for payment of the appraised value of his shares to any stockholder who should object to the sale and conveyance; and that in fact some stockholders have not surrendered their shares, and certificates for shares of Socony-Vacuum have not been delivered to them. A distribution of stock to shareholders willing to receive it may be a dividend. *Wilder* v. *Tax Commissioner*, 234 Mass. 470. *Coolidge* v. *Grant*, 251 Mass. 352. Compare *Willson* v. *Laconia Car Co.* 275 Mass. 435. It is to be further noted that the Vacuum stock was to be surrendered to the Vacuum Company for cancellation and was not to be delivered to Socony-Vacuum, as was the case in respect to the parties involved in *Commissioner of Corporations & Taxation* v. *Hornblower*, 278 Mass. 557. We think there was here no exchange between the stockholders of Vacuum and Socony-Vacuum of shares in the respective corporations but a sale by Vacuum of all its assets in consideration for stock of Socony-Vacuum which was to be distributed to the stockholders of Vacuum. In the circumstances here shown, disregarding the form, the distribution to stockholders was a dividend resulting from stock ownership and was taxable under G. L. (Ter. Ed.) c. 62, § 1 (b).

In view of the decision in *Commissioner of Corporations & Taxation* v. *Hornblower*, 278 Mass. 557, and of the decisions of the United States Supreme Court in *Cullinan* v. *Walker*, 262 U. S. 134, 137, and *Marr* v. *United States*, 268 U. S. 536, 540, we think the request of the appellee for a ruling that "The appellee in assessing the additional tax complained of in no way violated the Fourteenth Amend-

ment to the Constitution of the United States" was rightly given, and that no further discussion of that issue is required.

The appellant contends that the transaction was tax exempt under G. L. (Ter. Ed.) c. 62, § 5 (c), to the effect that no gain or loss shall be deemed to accrue where, upon a reorganization of one or more corporations, an exchange of shares is made, the new shares received representing the same interest in the same assets as did the old shares. The short answer to this contention is that the tax in the pending case is assessed under G. L. (Ter. Ed.) c. 62, § 1 (b), to which G. L. (Ter. Ed.) c. 62, § 5 (c), has no application. *Van Heusen* v. *Commissioner of Corporations & Taxation*, 257 Mass. 488, 490. Even if § 5 (c) were applicable to the tax in the case at bar, the shares of Socony-Vacuum clearly represented an interest in assets entirely different from those represented by the shares of Vacuum. *Stone* v. *Tax Commissioner*, 235 Mass. 93, 95. *Marr* v. *United States*, 268 U. S. 536, 541.

The appellant contends that the appellee's construction of the statute under which the tax was laid is violative of c. 1, § 1, art. 4 of the Constitution of Massachusetts, and of art. 44 of the Amendments thereto, in that "To tax a stockholder of Vacuum and not to tax a stockholder of Socony upon the merger of these corporations is certainly not applying and administering the said statute so as to bring it within the provisions of the Massachusetts Constitution as set forth in art. 44 of the Amendments," which provides that the tax on income shall be "levied at a uniform rate throughout the commonwealth upon incomes derived from the same class of property." This question does not appear by the record to have been raised before the Board of Tax Appeals and is not now open in this appeal. *West Boylston Manuf. Co.* v. *Board of Assessors*, 277 Mass. 180, 182. G. L. (Ter. Ed.) c. 58A, § 13, lines 54–56. It is stated in the agreed facts that the appellee "has levied" no assessment on the former stockholders of the Standard Oil Company of New York; but it is apparent that the issue now presented was not passed upon by the Board of

Tax Appeals and that that issue should not now be discussed.

We find no error in the rulings given at the request of the appellee.

*Petition dismissed with costs.*