MARY D. AYERS *vs.* STATE TAX COMMISSION.

Suffolk.     April 5, 1965. — April 30, 1965.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, SPIEGEL, & REARDON, JJ.

*Taxation,* Income tax. *Corporation,* Reorganization.

In the circumstances, where a corporation whose only assets were stock of various classes in a second corporation was in 1958 merged into the second corporation by a merger whereby all stock of both corporations was converted into new voting common stock of the second corporation and the new stock was issued in certain proportions to the stockholders of both corporations for their old stock, a part of the merger involving an exchange of ten shares of the new stock for each share of old nonvoting common stock in the second corporation was sufficiently separate from the rest of the merger to permit treating that part by itself as a mere split of such common stock leaving the holders thereof with substantially the same interest in the same assets after the split, so that a stockholder of the second corporation who had owned only shares of the old nonvoting common stock therein realized no taxable gain from the merger transaction within G. L. c. 62, § 5 (c), as amended through St. 1957, c. 540, § 1.

APPEAL from a decision by the Appellate Tax Board.

*David R. Pokross (J. Alex Lane* with him) for the taxpayer.

*Herbert E. Tucker, Jr.,* Assistant Attorney General, for the State Tax Commission.

CUTTER, J. This is the taxpayer's appeal from a decision of the Appellate Tax Board denying the taxpayer's application for abatement of a tax on income received in 1958, assessed under G. L. c. 62, § 5 (c), as amended through

St. 1957, c. 540, § 1.[1]   The case was heard before the board on a statement of agreed facts.

On December 12, 1958, the taxpayer owned 735 shares of nonvoting common stock of The Great Atlantic & Pacific Tea Company, Inc. a Maryland corporation.   On that day, pursuant to articles of merger, The New York Great Atlantic & Pacific Tea Company, Inc. (the New York corporation) was merged into the Maryland corporation.

Prior to the merger the Maryland corporation had outstanding 260,362 shares of first preferred stock, 1,150,000 shares of voting common stock, and 935,812 shares of nonvoting common stock.   The New York corporation owned as its only assets all the Maryland corporation's voting common stock, 96,035 shares (about 37%) of its first preferred stock, and 577,510 shares (about 62%) of its nonvoting common stock.[2]

In the merger all the shares of the Maryland corporation and of the New York corporation were converted into 21,639,206 shares of new $1 par value common voting stock of the Maryland corporation.   Three shares of the new common stock were issued for each share of the Maryland corporation's first preferred stock, and ten new common shares were issued for each share of the Maryland corporation's old common stock, whether voting or nonvoting.   No new common shares of the Maryland corporation (distributable on account of its old shares held by the New York corporation) were issued directly to the New York corporation.   Instead, the new common stock was exchanged for

---

[1] With respect to taxable years commencing after December 31, 1958, § 5 (c) was amended or affected by St. 1959, c. 556, §§ 2, 3, and 4, so that various reorganization exchanges of securities, tax free in whole or in part under the Federal income tax law, would be similarly treated in Massachusetts under § 5 (c).   This later amendment and that effected by St. 1960, c. 554, § 1, are not here involved.

[2] A majority of the New York corporation's 88,000 shares of first preferred stock and all of its 220,000 shares of common stock were owned by descendants of the founder of the enterprise (one Hartford) and by a charity.   Although this concentration of ownership may have made voting rights upon the minority shares of no practical importance, we deal with the case upon the basis that the addition of voting rights must be afforded its full legal significance without regard to the persons for the time being owning a majority of the new common shares.

such old shares directly with the shareholders of the New York corporation in proportion to their respective indirect interests in the old shares of the Maryland corporation which had been owned by the New York corporation. As a total consequence of the transactions accompanying the merger, it seems to be undisputed that this taxpayer's position in the Maryland corporation changed as indicated in the margin.[3]

If the split-up of the old common stock, taken in connection with other aspects of the merger, constituted a taxable exchange under c. 62, § 5 (c), as in effect on December 12, 1958,[4] the taxpayer received substantial gains in that year. Upon the amount of his computation of such alleged gains, the commissioner assessed an additional tax. After credits, the total net amount of additional tax claimed from the taxpayer, plus surtax and interest, is $12,832.26. No part of this amount has been paid.

---

[3]

| The taxpayer's shareholdings before the merger transactions | The taxpayer's shareholdings after the merger transactions |
|---|---|
| (a) 735 shares of old common stock, having | (a) 7,350 shares of new common stock (split 10 for 1), having |
| (b) no par value and | (b) a $1 par value per share and |
| (c) no voting rights, and being | (c) voting rights, and |
| (d) subject to cumulative claims for preferred stock dividends. | (d) not being subject to any preferred stock priorities (because the preferred stock no longer existed). |

The taxpayer concedes that the book value of her stock increased by 3% as a consequence of the merger. It was stipulated that her percentage of the corporate equity decreased by .0013%. It is uncertain whether the new common stock had greater preëmptive rights than the old. The board, perhaps without adequate evidential support, found that the new common stock did have greater preëmptive rights than the old common shares. No contention is made by any party that the assets of the Maryland corporation were altered by the merger.

[4] Section 5 (c) as amended through St. 1957, c. 540, § 1, reads, in part, "(c) The excess of the gains over the losses recognized by the taxpayer from . . . exchanges of intangible personal property, hereinafter in this subsection referred to as the 'net capital gain', shall be taxed at the rate of three per cent [apart from additional tax and surtax under separate statutes]. . . . If, in any exchange of shares upon the reorganization of one or more corporations . . . the new shares received in exchange for the shares surrendered represent the same interest in the same assets, no gain or loss shall be deemed to accrue from the transaction until a sale or further exchange of such new shares is made."

Two issues are presented for decision, viz. (1) whether the substitution of the taxpayer's new common shares in the Maryland corporation for her old nonvoting shares constituted a taxable exchange; and (2) if the exchange was taxable, what fair market value is properly to be attributed to the new common shares when acquired by the taxpayer.

1. This is the most recent in a line of cases arising under § 5 (c), as it stood prior to the 1959 statute (see fn. 1), in which the Massachusetts taxing authorities have attempted to impose an income tax upon an alleged gain from an exchange of shares made in connection with a corporate reorganization in circumstances in which no gain or loss would have been recognized under the then applicable Federal income tax statutes.[5] The commission, in arguing that gain must be recognized, now principally relies upon *Boston Safe Deposit & Trust Co.* v. *State Tax Commn.* 340 Mass. 250. The taxpayer makes essentially three contentions in support of the position that no taxable transaction was involved: (1) that, breaking down the merger into its component transactions, and viewing individually those transactions affecting holders of the old common nonvoting stock (as distinguished from the exchanges of the old Maryland corporation preferred stock for new common shares), the only transaction which partakes of an exchange is the surrender of one old Maryland corporation common nonvoting share for ten new common shares; (2) that this exchange is essentially a paper exchange (see *State Tax Commn.* v. *Smith,* 331 Mass. 387, 389) by way of nontaxable split-up; and (3) that, in any event, after the merger each holder of the old nonvoting common stock had essentially the same interest in the same assets as before the merger.

---

[5] The earlier cases are collected in Nichols, Taxation in Massachusetts (3d ed.) 492–497, and Barrett and Bailey, Taxation, § 417. Prior to 1959, some well known corporations in other States, the shares of which were widely held, often failed to take into account the somewhat unusual provisions of c. 62 (see *Allen* v. *State Tax Commn.* 337 Mass. 502, 506) in framing reorganizations. Not infrequently this resulted in unexpected, and sometimes unfair, tax consequences (see e.g. *De Cordova* v. *Commissioner of Corps. & Taxn.* 314 Mass. 371, 373–374) for their Massachusetts stockholders. The resulting inequity undoubtedly led to the adoption of the 1959 amendments (fn. 1). See 1958 House Doc. No. 99, pp. 8–9; 1959 Senate Bill No. 420; 1959 House Bill No. 917.

In support of her first contention, the taxpayer argues that (a) changing the old common shares from no par common shares to $1 par value common shares, (b) adding voting rights (and possibly also preëmptive rights) to the old non-voting shares, and (c) retiring the preferred stock, involved by themselves no element of taxable exchange for the holders of the old nonvoting common stock.

We think that, if only these three changes in capitalization and shareholders' rights had occurred, there would have been (a) no exchange of shares sufficient to cause the realization of gain or loss and (b) no alteration of interests giving rise to any substantial change in each common shareholder's percentage interest in the total corporate assets, which themselves remained unchanged. Cf. *Madden v. State Tax Commn.* 333 Mass. 734, 739 (different assets).[6] Whether there here was an occasion for the recognition of taxable gain must depend upon (a) whether the merger is to be viewed as a single transaction or (b) whether its component parts which involved no exchange may be separated from the single transaction affecting the old common shareholders which might be regarded as an exchange.

In *Boston Safe Deposit & Trust Co.* v. *Commissioner of Corps & Taxn.* 273 Mass. 187, 193, 196,[7] the commissioner separated out one element from a corporate reorganization (in essence a single transaction made up of several steps) which was (if viewed broadly as a single transaction) a nontaxable exchange of shares. By examining each step separately, it became possible to treat a single component part of the reorganization as a taxable dividend. This court in 1930 upheld this separate treatment. There is no

---

[6] Of course, the surrender of old preferred shares for new common shares resulted in a loss of the old preferred shareholders' priority claims (to dividends and in liquidation). This, consequently, gave the holders of old preferred shares an essentially different type of share and interest in the Maryland corporation from what they had owned before the merger. This circumstance, however, would have no effect upon the exchange made by the common shareholders, if that exchange of nonvoting common shares resulted in the retention, by the former holders of such shares, of essentially the same interest in the unchanged assets of the Maryland corporation.

[7] See also *Commissioner of Corps. & Taxn.* v. *Hornblower*, 278 Mass. 557, 562–563. Cf. *Wellman* v. *Commissioner of Corps. & Taxn.* 289 Mass. 131, 139.

logical reason for not similarly breaking a reorganization into its component parts when the consequence may be to make the transaction nontaxable. Particularly is this true where each holder of old common stock, viewing the transaction as a whole, comes out after a merger with essentially the same proportionate interest in the same corporate assets as that theretofore held by him.

If the transaction is viewed in its component parts, the split-up by itself would not have been a taxable transaction in respect of the holders of old common shares if it had been carried out (as it could have been) separately from the other adjustments of the common shares. If the merger is viewed as a unit, it perhaps may come within the limits (permitting trivial variations between old and new securities without recognition of gain) in effect approved as constituting "the same interest in the same assets" in *Commissioner of Corps. & Taxn.* v. *Tousant,* 309 Mass. 84, 90. This we need not decide if we view the split-up transaction wholly by itself. We recognize, of course, that, in the *Tousant* case, this court placed some reliance upon the finding of the Appellate Tax Board that the new shares there received represented the same interest in the same assets as the old shares. Nevertheless, enough appeared in the *Tousant* case to show that there was probably substantially more variation between the old and new shares than the trivial variation (see fn. 3) shown here.

In *Boston Safe Deposit & Trust Co.* v. *State Tax Commn.* 340 Mass. 250, 251, the taxpayer trustees engaged in an exchange of old second preferred stock and common stock for new cumulative preferred and new common stock. The case was dealt with on the basis that on the record it could not be said (see p. 259) "that the changed bundle of rights of each class of old shareholders . . . after the reclassification . . . represent[ed] the same interest in the same assets as the aggregate of rights held by that class before the reclassification." It will be noticed that, after that reclassification, there still remained outstanding as senior to the new common shares a new and different preferred

stock in place of the two classes of preferred stock which previously had been prior to the old common shares. We discussed the exchanges made by those taxpayer trustees as a single transaction (without separating the transaction into its component parts), in which the trustees exchanged old shares of two classes for new common shares and new preferred shares, and said (p. 259) that "[o]ld preferred stockholders of each class lost valuable rights for the benefit of the common shareholders, while gaining other rights at their expense." The original papers indicate no effort by the parties to have the component elements of that recapitalization considered separately, perhaps because they were so interdependent as to make such separate consideration impracticable.

In the circumstances now before us, we think that the exchange of old nonvoting shares for new common shares was sufficiently separate from the rest of the merger transactions to permit treating it by itself as merely a split-up of common shares. The other aspects of the adjustment partook of no necessary aspect of exchange, as was pointed out by a letter, before the board, from a representative of the Maryland corporation. Viewing the split-up by itself, each holder of old nonvoting common shares after the split-up had so substantially the same interest in the same assets that the change, within principles discussed in the cases already cited, should not be taken to be the occasion for the recognition of gain or loss.

2. There of course is no occasion, upon our view of the case, for considering questions concerning the commissioner's valuation of the new common shares.

3. The decision of the Appellate Tax Board is reversed. The case is to be remanded to the Appellate Tax Board to compute the amount of abatement which now should. be made. The taxpayer is to have costs of appeal.

*So ordered.*