SAMUEL P. COFFMAN, trustee, vs. STATE TAX COMMISSION.

Suffolk.    April 3, 1974. — May 21, 1974.

Present: TAURO, C.J., REARDON, QUIRICO, BRAUCHER, WILKINS, JJ.

Trust, Business trust, Massachusetts trust.    Taxation, Income tax.

The trustee of a Massachusetts business trust with transferable shares who had filed a statutory agreement pursuant to G. L. c. 62, § 1 (e), to pay "any tax imposed by section five," and who in 1966 sold real estate pursuant to a plan of dissolution and distributed the proceeds in cancellation or redemption of the shares and paid a tax on the gain from the sale as "business income" at two and one-half per cent plus surtax under § 5 (b), was not obligated to pay in lieu thereof a tax at six per cent plus surtax under § 5, on the ground that the cancellation or redemption of the shares constituted a sale or exchange taxable under § 5 (c), and that under the agreement the trustee was required to pay the tax on the capital gain "which would otherwise be imposed on the individual [Massachusetts] shareholders" under § 5 (c). [338-343]

APPEAL from a decision of the Appellate Tax Board.

Arthur M. Gilman (Edward J. Lonergan with him) for the taxpayer.

Robert H. Quinn, Attorney General (Walter H. Mayo, III, Assistant Attorney General, with him) for the State Tax Commission, submitted a brief.

BRAUCHER, J.    This is an appeal by a taxpayer, the trustee of a Massachusetts business trust, from a decision of the Appellate Tax Board. G. L. c. 58A, § 13. Pursuant to G. L. c. 62, § 1 (e), as amended through St. 1963, c. 496, he had filed an agreement to pay taxes imposed by G. L. c. 62, §§ 1 (d) and 5. Thereafter, in 1966, he sold real estate

---

pursuant to a plan of dissolution and distributed the proceeds in cancellation or redemption of transferable shares. The board held that the trust was obligated to pay a tax on the capital gain realized by its Massachusetts shareholders. We reverse.

We summarize the statement of agreed facts. The taxpayer is the trustee of the Court Street Realty Trust, a Massachusetts trust with transferable shares created on December 30, 1960. Before January 1, 1966, he filed the statutory agreement. On March 31, 1966, he sold a parcel of land, realizing a gain of $1,068,511. In his 1966 income tax return, filed in 1967, he reported the gain, and a tax of $32,316.71, computed at two and one-half per cent on "business income" plus twenty-three per cent surtax, was paid. On February 17, 1970, the Department of Corporations and Taxation notified him of its intention to assess an additonal tax because the gain should have been taxed at the rate of six per cent plus the twenty-three per cent surtax. He later received a bill for the additional tax, and his application for abatement was denied by the State Tax Commission.

On appeal to the board, it found that the sale was made under a plan of dissolution and that pursuant to the plan the transferable shares of the trust were cancelled or redeemed. The board ruled that the cancellation or redemption constituted a sale or exchange taxable under G. L. c. 62, § 5 (c), and that under the terms of the statutory agreement the trustee was "required to pay the tax, if any, which would otherwise be imposed on the individual shareholders" under § 5. The board also ruled that the gain was to be determined by comparing the fair market value of the property received in redemption by the Massachusetts shareholders with the basis of their shares. Later it adopted the taxpayer's computation of the amount, according to which $58,974.19 in tax and interest was due.

1. "Business organizations formed by declarations of trust, whereby property is conveyed to trustees to be held and managed by them for the benefit of such persons as

may from time to time be holders of transferable shares issued by the trustees and evidencing their beneficial interest in the trust property, have been recognized for many years as a common and lawful method of transacting business in this Commonwealth." *State St. Trust Co.* v. *Hall,* 311 Mass. 299, 303-304 (1942). In 1966, such a business trust was not subject to Massachusetts income taxation unless it filed the statutory agreement. G. L. c. 62, §§ 1 (d), 5 (d). See Barrett and deValpine, Taxation of Business Trusts and Other Unincorporated Massachusetts Entities with Transferable Shares, 40 B. U. L. Rev. 329, 335-336 (1960).[1] But unless the statutory agreement was filed the shareholders were subject to taxes on dividends "regardless of their source and whether taxable or not." G. L. c. 62, § 1, (e). See *State Tax Commn.* v. *Fine,* 356 Mass. 51, 55-59 (1969). Thus rental income received by the trust and distributed to shareholders might be taxed as dividends even though rental income generally was not subject to income tax. See Barrett and Bailey, Taxation (2d ed.) § 296 (1970).

Certain trusts, however, were permitted to avoid this result by filing a statutory agreement. G. L. c. 62, § 1 (c). See *State Tax Commn.* v. *Fine, supra,* at 53-55. The agreement was one "to pay to the commonwealth annually the tax imposed by subsection (d) and any tax imposed by section five." G. L. c. 62, § 1 (e). If such an agreement was filed, dividends on the shares of the trust were exempt from taxation under § 1, and such trusts were to "pay to the commissioner annually a tax of six per cent of the income derived from their property, so far as such income would be taxable under this section if received by an inhabitant of the commonwealth." G. L. c. 62, § 1 (d). Moreover, under § 5 (d), if dividends on the shares of the trust were not taxable under § 1, income "of the classes enumerated in subsections (a), (b), and (c) [of § 5] *received by any*

---

[1] These provisions were radically revised in 1971. See Barrett and Bailey, Taxation (2d ed.) § 657 (Supp. 1974).

partnership, association or *trust,* the beneficial interests in which are represented by transferable shares," were to be taxed under § 5 (emphasis supplied). In the *Fine* case, *supra,* at 54, we read the statute as requiring agreement to pay the tax imposed by § 1 (d) and any tax imposed by § 5 "upon *the trust's* annuities, business income, and capital gains" (emphasis supplied).

In the present case it is undisputed that the trust was eligible to file the statutory agreement, and that it did so. There is no issue as to taxation under § 1 (d) of income derived from property of the trust. The only issue arises under the agreement to pay "any tax imposed by section five." It is common ground that the trust received a profit from the sale of real estate, a transaction entered into for profit, and that such a profit was "business income" taxable at two and one-half per cent plus surtax under § 5 (b), as amended by St. 1957, c. 677, § 1. St. 1966, c. 698, § 75. In the absence of a cancellation or liquidation of shares, there is no question that such "business income," if received by the trust, would have been taxed to the trust at that rate, and that a subsequent distribution of the income as dividends to shareholders would not have been taxable to them or to the trust.

2. Under § 5 (c), as amended through St. 1960, c. 554, § 1, net capital gain "from purchases, sales or exchanges of intangible personal property" was taxable at six per cent plus surtax. If a trust with transferable shares cancelled or redeemed its stock, the transaction was to "constitute a sale or exchange for the purposes of this chapter. The gain or loss shall be determined by comparing the fair market value of the property received in redemption with the basis of the stock cancelled or redeemed." The board ruled that § 5 (c) imposed this tax on the shareholders of the trust, and that under the terms of the statutory agreement the trustee was required to pay it. It referred the parties to its decision in *Longwood Towers Co.* v. *State Tax Commn.* Docket No. 41,500 (1967). That decision is explained in the opinion in companion cases, *Davison* v. *State Tax Commn.* Docket Nos. 41,498 and 41,499 (1967).

The transaction in the *Longwood Towers* cases was substantially the same as that in the present case, and the governing statutes were the same. The trust there as here had reported gain on a sale of real estate as "business income." But there no additional tax was assessed on the trust. Instead the trust applied for an abatement of the tax on business income; and additional taxes on capital gains were assessed on the shareholders, who applied for abatement. The board held that the same income should not be taxed twice, once to the trust at the business income rate and once to the shareholders at the capital gain rate. It denied the abatement sought by the trust, but granted that sought by the shareholders. There is no indication that a capital gains tax was assessed against the trust, but the board did express the opinion that nothing in the statutes prevented "a trust which has filed the agreement from paying the taxes on income arising from a liquidation and distribution as well as on income from ordinary business activities."

The question whether the shareholders were taxable on the capital gain received by them is not before us in this case, and we express no opinion on the correctness of the *Davison* decision on that question. But we do find in § 5 (c) an intention to impose a tax on a person who receives a capital gain on the cancellation or redemption of his transferable shares in a trust, and in § 5 (d) an intention to impose on a trust a tax on capital gains only if received by the trust. We think it is inconsistent with the statutory provisions to impose a tax on the trust with respect to a capital gain received, not by the trust, but by the shareholders.

3. A provision permitting certain trusts with transferable shares to relieve their shareholders of income taxation on the trust's dividends was part of our first income tax statute. St. 1916, c. 269, § 2 (c). See *State Tax Commn.* v. *Fine,* 356 Mass. 51, 55 (1969); 1 Mass. L. Q. (No. 4) 291, 292-293 (1916). Section 5 (c) of that statute provided for the taxation to the trust of income "received by" it, "to the same extent as if the . . . trust were an individual inhabitant

of this commonwealth." The scheme was clear: if the trustee had filed the statutory agreement, the trust was to be taxed like an individual. See Nichols, Taxation in Massachusetts (3d ed.) 480, 487 (1938); Barrett and Bailey, Taxation (2d ed.) § 296 (1970). Before 1955 trust distributions in cancellation or redemption of shares, to the extent that they did not constitute capital, were treated as dividends. *Follett* v. *Commissioner of Corps. & Taxn.* 267 Mass. 115, 117-119 (1929). *Commissioner of Corps. & Taxn.* v. *Fopiano*, 324 Mass. 304, 306 (1949). See Barrett and Bailey, *supra*, § 277. They were not taxable under § 5. *Commissioner of Corps. & Taxn.* v. *Hornblower*, 278 Mass. 557, 563 (1932). *Commissioner of Corps. & Taxn.* v. *Fopiano, supra.* See Barrett and Bailey, *supra*, § 411.

By St. 1955, c. 635, §§ 1, 2, liquidation distributions were removed "from the field of dividend taxation." 1955 House Doc. No. 90, p. 2. See 1955 Ann. Surv. of Mass. Law, § 16.3. Section 1 (g) was amended to provide that such distributions were not taxable under § 1, and § 5 (c) was amended to provide that cancellation or redemption should "constitute a sale or exchange" and to provide a method of determining the gain or loss. These changes did not convert the scheme from one of taxing the trust as if it were an individual to one of taxing the trust as if it were the shareholders. "The business trust, if taxed, is taxed exactly as if it were an individual, and not as if it were in any sense a composite of projections of the individual tax personalities of its shareholders." Barrett and deValpine, Taxation of Business Trusts and Other Unincorporated Massachusetts Entities with Transferable Shares, 40 B. U. L. Rev. 329, 341 (1960).

Before 1955, double taxation of the sort common in corporate taxation was avoided in the taxation of business trusts. *DeBlois* v. *Commissioner of Corps. & Taxn.* 276 Mass. 437, 439-440 (1931). See Nichols, Taxation in Massachusetts (3d ed.) 480-481 (1938). But there is no indication that any effects of the 1955 changes were inadvertent. See Barrett and Bailey, Taxation (2d ed.) §§ 276, 412 (1970); Barrett and deValpine, *supra*, at 339, 341-344. The

board in the *Davison* decision thought it anomalous that there might be two taxes if the trustee filed the statutory agreement but only one tax to the shareholders if he did not. But the tax to the trust could have been avoided by giving notice that the agreement was terminated. See Barrett and Bailey, *supra*, § 658.

4. The decision of the Appellate Tax Board is reversed. The case is remanded to the board. An abatement is to be granted in accordance with this opinion.

*So ordered.*