ELIZABETH C. MADDEN *vs.* COMMISSIONER OF CORPORATIONS AND TAXATION.

ANGELE W. MADDEN *vs.* SAME.

Suffolk. April 4, 1932. — September 24, 1932.

Present: RUGG, C.J., CROSBY, WAIT, & DONAHUE, JJ.

*Tax*, On income. *Corporation*, "Rights." *Words*, "Property acquired by purchase," "Otherwise than by purchase," "Cost."

Where a stockholder of a corporation in 1928 received from it "rights," of substantial value, enabling him to subscribe for new shares of its stock at par, and he acquired the new shares by surrendering such "rights" and by paying in cash the par value of the shares, such new

shares were "acquired by purchase" and not "otherwise than by purchase" within the meaning of G. L. c. 62, § 7, in the amended form appearing in St. 1928, c. 217, § 2.

For the purpose of taxing, under G. L. c. 62, § 5 (c), in the amended form appearing in St. 1928, c. 217, § 1, the gain resulting to the stockholder from a sale of the new shares of stock above described, the "cost" of such shares, within the meaning of said § 7, as so amended, included the value of the "rights" surrendered as well as the amount paid in cash.

It *seems* that St. 1931, c. 435, has changed the meaning of such "cost" in circumstances of the character above described.

Two APPEALS, filed by taxpayers in the Supreme Judicial Court for the county of Suffolk on December 12, 1931, from decisions by the Board of Tax Appeals upon petitions by the taxpayers for the abatement of certain taxes.

Material facts appear in the opinion.

*D. Burstein*, for the taxpayers.

*J. E. Warner*, Attorney General, & *R. Clapp*, Assistant Attorney General, for the commissioner of corporations and taxation, submitted a brief.

RUGG, C.J.  The question of law raised in these two cases is whether under the governing statutes as to taxation of income in calculating gains realized during the year 1929 from sales of shares of stock in a corporation acquired after January 1, 1916, through the exercise by a stockholder of rights issued to him to subscribe for new stock, the cost of such stock includes the value of the rights as well as the subscription price, or whether such cost is the subscription price alone.  Each of the appellants was the owner of shares of stock in a corporation.  That corporation in 1928 issued to each of its stockholders rights to subscribe for new shares of its stock at par.  Those rights had a substantial market value when issued and were worth at least as much when used by the appellants.  Each appellant utilized the rights issued to her by surrendering the rights and subscribing for new shares of stock at par.  During 1929 some of the shares thus acquired by subscription were sold.  Hence arises question as to the taxation as income of the excess of gains over losses received by each appellant from purchases and sales of intangible personal property.

The governing statutes are sections of G. L. c. 62, which so far as material are § 5 (c) as then most recently amended by St. 1928, c. 217, § 1: "Income of the following classes received by any inhabitant of the Commonwealth during the preceding calendar year shall be taxed as follows: . . . (c) The excess of the gains over the losses received by the taxpayer from purchases or sales of intangible personal property, whether or not said taxpayer is engaged in the business of dealing in such property, shall be taxed at the rate of three per cent per annum"; and § 7 as then most recently amended by St. 1928, c. 217, § 2: ". . . In determining gains or losses realized from sale of capital assets, the basis of determination, in case of property owned on January first, nineteen hundred and sixteen, shall be the value on that date, and in case of property acquired by purchase thereafter, the cost thereof. If the property other than stock dividends in new stock of the company issuing the same was acquired otherwise than by purchase, the basis of determination of the gain or loss shall be the value on the date when it was so acquired."

It is plain that the last sentence of said § 7 is not applicable to the facts of the cases at bar. The excess of gains over losses here subject to taxation arose from sales of shares of stock. Those shares were acquired by subscription by the appellants from the corporation issuing the same. That subscription was accomplished by the payment in cash or its equivalent of the par value of the stock to the corporation accompanied by the surrender to the corporation of certain rights. This in substance and effect was a purchase of the shares of stock from the corporation. *Osgood* v. *Tax Commissioner*, 235 Mass. 88, 92. Therefore the shares of stock sold by each appellant were acquired by purchase. They were not acquired "otherwise than by purchase." They were "property acquired by purchase" after January 1, 1916. The crucial point for decision is how the "cost" of those shares of stock shall be determined as the word "cost" is used in the first sentence quoted from said § 7. It is conceded that the par value paid in cash by the appellants to the corporation is at least a part of that

cost. In order to acquire those shares each appellant in addition to paying the par value in cash also surrendered to the corporation rights which previously had been issued by the corporation to her as one of its stockholders. Rights given by a corporation to its shareholders to subscribe for new stock to be issued by it constitute an attribute of the existing shares. They represent the privilege accorded to shareholders of participating, in preference to strangers and on equal footing with other shareholders, in buying new shares of capital stock to be issued by the corporation. The value of each new share is the par value paid by the subscriber plus a sum equal to the difference between its par value and its market value. This additional sum represents the value of the rights in the market. Although these rights come to the shareholder as a gratuity, cost him nothing, and are a new thing of value not theretofore possessed by him, they have in the hands of the holders a genuine value which may be turned to profitable account either by sale or by subscription to new stock. Rights cannot ultimately be made available for valuable use except in connection with subscription for new stock either by the original holder or his assignee. The rights thus are things of value to the shareholder. If used in connection with subscriptions for new stock they represent capital in the form of shares; if sold, they become cash in hand. *Hyde* v. *Holmes*, 198 Mass. 287, 293. *Tax Commissioner* v. *Putnam*, 227 Mass. 522, 532–534. *Allen* v. *Commissioner of Corporations & Taxation*, 272 Mass. 502, 505. *Miles* v. *Safe Deposit & Trust Co. of Baltimore*, 259 U. S. 247, 252. Each of the appellants had the option after the rights were issued to her either to sell them or to use them in connection with subscription for new stock. When rights are used in connection with subscription for new stock, the holder parts with something of value. To the extent to which the rights have a value they enter into the cost of the new shares to the shareholder who uses them in connection with his subscription. This is the practical effect of the transaction. However cost may be defined, according to common understanding, a thing of value which in combination with money is trans-

. ferred to another in return for some other new thing of value constitutes a part of the cost of that which is acquired.

As was pointed out in *Allen* v. *Commissioner of Corporations & Taxation*, 272 Mass. 502, at pages 504, 505, changes were made in provisions of the income tax law controlling the taxation of income derived from rights to subscribe at the time of the decision in *Tax Commissioner* v. *Putnam*, 227 Mass. 522, at pages 532, 533, 534, by St. 1928, c. 217, §§ 1, 2. Those changes compelled a conclusion in the *Allen* case in favor of the taxpayer notwithstanding what was said and decided in the *Putnam* case.

The result seems to us to follow necessarily that in calculating the excess of gains over losses of the appellants the cost of the new shares includes the value of the rights as well as the subscription price. The appellants are correct in their contentions. It may be that this result is undesirable. We can only interpret the words of the statute. We cannot legislate. It would seem that by St. 1931, c. 435, the force and effect of said §§ 5 (c) and 7, as amended, have been changed in their application to situations like those here presented. We cannot by construction of the statute controlling the facts in the case at bar anticipate the operation of said c. 435.

According to stipulation of the parties, each appellant is entitled to abatement in the sum of $46.27 with interest.

*So ordered.*