LINCOLN BRYANT, executor, *vs.* COMMISSIONER OF
CORPORATIONS AND TAXATION.

Suffolk.    December 7, 1934. — September 11, 1935.

Present: RUGG, C.J., CROSBY, DONAHUE, & LUMMUS, JJ.

*Tax,* On income.

On an exchange of stock in one corporation for stock in another corpora-
tion then having a market value greater than the cost of the stock
surrendered, a taxable gain in the amount of the difference was then
realized by the stockholder under G. L. (Ter. Ed.) c. 62, §§ 5 (c), 7,
although he then made, and performed, a contract with another
person not to sell the stock received within a year without the other
person's consent, and later sold such stock for an amount less than
the cost of the stock surrendered.

APPEAL, filed in the Supreme Judicial Court for the
county of Suffolk on August 30, 1934, by a taxpayer from
a decision by the Board of Tax Appeals disallowing a peti-
tion for abatement of an income tax.

*F. H. Nash,* for the taxpayer.

*C. F. Lovejoy,* Assistant Attorney General, for the Com-
missioner of Corporations and Taxation.

RUGG, C.J.    This is an appeal by a taxpayer from a de-
cision of the Board of Tax Appeals.    The question at issue
is whether income taxable under the law was received
during 1930 by Annie L. Sears (hereafter called the tax-
payer), of whose will Lincoln Bryant is executor.    The facts
are these: The taxpayer, pursuant to a contract between
New England Power Securities Company and Arthur E.
Childs and others, delivered to the New England Power
Securities Company certain shares in Massachusetts Utili-
ties Associates, a Massachusetts trust, which had cost her
$9,298.21, and received in exchange three hundred thirty-
one shares of Class A stock of International Hydro-Electric
System, a Massachusetts corporation.    The contract was
executed by Arthur E. Childs and others, representing the

taxpayer and other shareholders of Massachusetts Utilities Associates who owned or controlled approximately fifteen thousand preferred and thirteen thousand common shares. By the contract they agreed that none of the Class A stock so acquired should be disposed of without the consent of New England Power Securities Company for one year from the date of the contract, which was March 5, 1930. Small lots of Class A stock in International Hydro-Electric System not included in this or similar contracts sold on the stock exchange on or about March 5, 1930, at $44 per share. A year later the sale price per share was $29 in small lots. None of the taxpayer's stock was sold until September, 1932, when one hundred shares were sold at $9.125 per share and two hundred thirty-one at $8 per share. The taxpayer made no income tax return of any gain on this exchange, being advised that no taxable gain had resulted. A tax was assessed on the difference between the cost of the shares of Massachusetts Utilities Associates delivered and the value of the shares of International Hydro-Electric System Class A stock at $44 per share received by virtue of this exchange. No contention is made that the computation was incorrect. The point to be decided is whether taxable income was received by the taxpayer.

The governing statutes are G. L. (Ter. Ed.) c. 62, §§ 5 and 7. So far as material they are in these words: "Income of the following classes . . . shall be taxed as follows . . . (c) The excess of the gains over the losses received by the taxpayer from purchases or sales of intangible personal property . . . shall be taxed . . . ." § 5 (c). "In determining gains or losses realized from the sale of capital assets, the basis of determination . . . shall be . . . the cost thereof. If the property other than stock dividends in new stock of the company issuing the same and rights to subscribe to securities was acquired by gift, the basis of determination of the gain or loss shall be the value on the date when it was so acquired." § 7.

The last sentence just quoted has no bearing on the question to be decided. It fixes a rule applicable to ascertainment of value of capital assets acquired by gift as dis-

tinguished from the rule for ascertainment of the value of such assets acquired by purchase fixed by the next preceding sentence. *Madden* v. *Commissioner of Corporations & Taxation,* 280 Mass. 321.

The position of the taxpayer before the Board of Tax Appeals was that no income resulted in the year 1930. The soundness of that position is the only question raised. The rule for ascertaining the value of the Class A stock was not challenged by any requests for rulings of law.

It is manifest upon the facts that there was no exchange of stock in liquidation, or dividend in liquidation, or merger of two companies, or stock in reorganization of Massachusetts - Utilities Associates. The shares received by the taxpayer do not represent the same interest in the same assets as those given in exchange. They apparently have no relation to each other except that one was received in exchange for the other. Cases like *Commissioner of Corporations & Taxation* v. *Hornblower,* 278 Mass. 557, and *Wellman* v. *Commissioner of Corporations & Taxation,* 289 Mass. 131, need not be considered.

The transaction by way of exchange constituted a sale by the taxpayer of her stock and the purchase of other stock in its stead. Stock in a different corporation was acquired in exchange for stock owned by her. She was taxable under G. L. (Ter. Ed.) c. 62, § 5 (c), on any gain accruing therefrom. *Osgood* v. *Tax Commissioner,* 235 Mass. 88. *Stone* v. *Tax Commissioner,* 235 Mass. 93. *United States* v. *Phellis,* 257 U. S. 156. *Rockefeller* v. *United States,* 257 U. S. 176. *Cullinan* v. *Walker,* 262 U. S. 134.

It is contended that the transaction did not result in any gain to the taxpayer during 1930 and therefore was not subject to the income tax. This contention rests upon the facts that during 1930 the Class A stock acquired by the taxpayer by the exchange was not in fact sold and, by reason of the contract with New England Power Securities Company, could not have been sold without the consent of that company.

The income tax under our Constitution and statutes is a property tax. It is not an excise. *Tax Commissioner* v.

*Putnam*, 227 Mass. 522, 531, 532, and cases cited. *Hart* v. *Tax Commissioner*, 240 Mass. 37. It cannot be assessed upon a mere paper profit. It can be laid only when new property of higher value than the cost of that given has been received in exchange. It was said in *Bingham* v. *Commissioner of Corporations & Taxation*, 249 Mass. 79, 80–81: "The word 'income' as used in these sections may be said to include the true increase in amount of wealth which comes to a person during a stated period of time. It imports an actual gain. It is based on the practical conception that additional property has come to the taxpayer out of which some contribution is exacted and can be paid for the support of government. Income indicates increase of wealth in hand out of which money may be taken to satisfy the enforced pecuniary contributions levied to help bear the public expenses. It does not comprehend increase in the value of capital investment discernible only by estimation and not otherwise. It refers simply to an increase in value realized by sales or conversion of capital assets. *Tax Commissioner* v. *Putnam*, 227 Mass. 522, 526, 529, 530. *Brown* v. *Commissioner of Corporations & Taxation*, 242 Mass. 242, 244. *Lapham* v. *Tax Commissioner*, 244 Mass. 40, 42."

The limitation upon the sale of the Class A stock received by the taxpayer through the transaction was not inherent in the stock itself. It was not established by the charter or by-laws of the corporation by which it was issued. It did not appear on the face of the certificates. It was extraneous to the stock although accompanying its acquisition by the taxpayer. It arose out of a contract voluntarily made by the taxpayer with an outside party. The stock was not essentially unsalable. The same kind of stock, not held under such a contract, was freely sold in the market. The full and complete ownership of the Class A stock vested in the taxpayer at the time of the exchange. The title was absolute and unqualified, and not subject to condition. The contract did not prohibit the taxpayer from selling the stock; it permitted sale with consent of New England Power Securities Company.

There is nothing in the record to indicate that the taxpayer ever sought that consent or that such consent would not have been given if requested. Attempts to restrict the normal operation of tax laws by the device of contracts on the part of the taxpayer strike at a vital function of government. They have not commonly been successful. In *Lucas* v. *Earl*, 281 U. S. 111, it was held that salary earned by a husband was taxable to him alone notwithstanding a valid contract made by him that it should be treated and considered as the joint property of himself and his wife. It was decided in *Burnet* v. *Leininger*, 285 U. S. 136, that an assignment by one partner of his interest in the partnership, coupled with an agreement to share equally in future profits and losses, did not relieve that partner of liability to taxation on his entire distributive share of the net income. In *Old Colony Trust Co.* v. *Commissioner of Internal Revenue*, 279 U. S. 716, 729, payment under contract by an employer of income taxes assessed against the compensation of an employee was decided to constitute additional taxable income of the employee. By *United States* v. *Boston & Maine Railroad*, 279 U. S. 732, payment of the income taxes of a lessor pursuant to a contract made long prior to the enactment of the statute taxing incomes was held to be additional taxable income of the lessor. See *Burnet* v. *Wells*, 289 U. S. 670, 677. The case at bar is distinguishable from cases like *Burnet* v. *Logan*, 283 U. S. 404, where the payment, although specified, was deferred and could not rightly be treated as income until received.

Several cases have arisen in the Federal courts upon facts indistinguishable in substance, although differing in details, from those in the case at bar. The discussions in the opinions in those cases are illuminating. A rule has been formulated, which has been succinctly stated in these words: "where a person voluntarily exchanges his property for other property under conditions that vest the power to sell the property received jointly in him and other persons, he receives taxable income to the extent of the profit derived from the transaction, if the property

received has a market value and is salable by those in whom the power of sale is vested under his voluntary agreement." *Newman* v. *Commissioner of Internal Revenue*, 40 Fed. Rep. (2d) (C. C. A.) 225, 227; *S. C.* on rehearing, 41 Fed. Rep. (2d) (C. C. A.) 743; certiorari denied, 282 U. S. 858. To the same effect are: *Rodrigues* v. *Edwards*, 40 Fed. Rep. (2d) (C. C. A.) 408; *Wright* v. *Commissioner of Internal Revenue*, 50 Fed. Rep. (2d) (C. C. A.) 727; *Union Guardian Trust Co.* v. *Burnet*, 64 Fed. Rep. (2d) 712, 714; *Heinz* v. *Commissioner of Internal Revenue*, 70 Fed. Rep. (2d) (C. C. A.) 461. See also *Tex-Penn Oil Co.* v. *Commissioner of Internal Revenue*, 28 B. T. A. 917, 965–966; *Henritze* v. *Commissioner of Internal Revenue*, 28 B. T. A. 1173.

The question in the case at bar is close and difficult. The contentions are nearly evenly balanced in merit. An exceptionally strong argument has been presented in behalf of the taxpayer. Nevertheless, we think that the principle just quoted from the *Newman* case is applicable to the facts here disclosed, and that taxable income was received by the taxpayer in 1930. This conclusion does not rest on the theory that the taxpayer could break her contract not to sell the stock without the required consent. It rests on the proposition that tax laws cannot be frustrated or rendered difficult of enforcement by contracts lying outside the essential features of a sale of stock by exchange for a different stock, whereby an increase of wealth realized according to practical conceptions had come to the taxpayer.

*Petition dismissed.*