COMMISSIONER OF CORPORATIONS AND TAXATION *vs.*
EMMA S. TOUSANT.

Suffolk.    October 7, 1940. — May 26, 1941.

Present: FIELD, C.J., DONAHUE, DOLAN, COX, & RONAN, JJ.

*Tax,* On income.

Nothing in the record disclosed error in a finding by the Appellate Tax Board on unreported statements of counsel that shares of preferred stock with a smaller rate of dividend and a smaller number of new common shares and certain warrants, received by a shareholder in a trust in exchange for shares surrendered by him upon its reorganization, represented "the same interest in the same assets"; and therefore, none of the shares so received having been sold, no gain taxable under G. L. (Ter. Ed.) c. 62, § 5 (c), as appearing in St. 1935, c. 481, § 1, was shown, although the market value of what was received exceeded the cost of what was surrendered.

APPEAL by the commissioner of corporations and taxation from a decision by the Appellate Tax Board granting an abatement of an income tax.

*O. V. Fortier,* Assistant Attorney General, for the commissioner of corporations and taxation.

*M. R. Durkin,* for the taxpayer.

RONAN, J.    The taxpayer, on June 23, 1937, was the owner of one hundred shares of seven per cent cumulative preferred stock and five hundred shares of Class C common shares in a certain association or trust, the beneficial interest in which was represented by transferable shares. On that day, in order to reduce the capitalization of the trust to eliminate a capital deficit, which prevented the payment of dividends under the terms of the trust, a plan of reorganization was approved and carried out by the shareholders. In accordance therewith the taxpayer surrendered her old shares in exchange for one hundred shares of five per cent cumulative preferred stock, one hundred seventy-five shares of common stock and one hundred twelve and one half purchase warrants, and waived arrears in dividends

of $40 per share on the old one hundred shares of cumulative preferred stock. The new shares and warrants were received by her prior to September 20, 1937, and were held by her during the remainder of the taxable year. The market value of these shares at the time of their receipt by her exceeded the cost of the old shares. A tax was imposed, allegedly under G. L. (Ter. Ed.) c. 62, § 5 (c), upon this excess, after deducting certain losses incurred by the taxpayer on account of other stock, as income received by the taxpayer during 1937 and taxable upon her return filed in 1938.

The case was heard by the Appellate Tax Board upon statements of counsel which are not reported. The board found that the new shares issued to the taxpayer represented the same interest in the same assets and granted an abatement of the entire tax. The commissioner of corporations and taxation appealed to this court.

The right to tax is one of the essential prerogatives and one of the inherent powers of sovereignty, *Commonwealth* v. *Norman*, 249 Mass. 123, 130; *Curry* v. *McCanless*, 307 U. S. 357, 366, but the exercise of this prerogative and power must be plainly authorized by an act of the Legislature before any tax may be imposed upon a citizen. Taxing statutes must be strictly construed, and liability to a tax must be founded in the express terms of a statute. Such liability cannot arise merely by implication from some statutory provision. *Hill* v. *Treasurer & Receiver General*, 229 Mass. 474. *Hayes* v. *Commissioner of Corporations & Taxation*, 261 Mass. 134. *Sayles* v. *Commissioner of Corporations & Taxation*, 286 Mass. 102.

Our income tax is a property tax, *United States Trust Co.* v. *Commissioner of Corporations & Taxation*, 299 Mass. 296; *Hale* v. *State Board of Assessment & Review*, 302 U. S. 95, which, not being "proportional . . . upon all . . . estates lying" within the Commonwealth as provided for by c. 1, § 1, art. 4 of the Constitution, could not become effective except by an amendment to the Constitution, permitting the imposition of a tax at different rates upon income derived from different classes of property and the same rate for each class. This was accomplished by the adop-

tion of the Forty-fourth Amendment to the Constitution in 1915, and the enactment of a statute in the following year, St. 1916, c. 269, and by successive statutes since providing for a tax upon various classes of income. Gains from the sales and purchases of intangible property are included within the sweep of these statutes. St. 1916, c. 269, § 5 (c), G. L. (Ter. Ed.) c. 62, § 5 (c), as amended by St. 1935, c. 481.

Under the statute in its original form, an exchange of the capital stock of one corporation for that of another corporation, which succeeded the first as the result of a reorganization or a consolidation, was a sale of the stock, and if the market value of the stock acquired exceeded the cost of that given in exchange, then this excess was income within this statute even though this new stock was held during the remainder of the taxable year by its owner. The gain was realized upon the receipt of the new stock. *Osgood* v. *Tax Commissioner*, 235 Mass. 88. *Stone* v. *Tax Commissioner*, 235 Mass. 93. The same conclusions were reached in holding that the gains presently resulting from the exchange of stock in carrying out a plan of reorganization, merger or consolidation of corporations were taxable income under the act of October 3, 1913, c. 16, 38 U. S. Sts. at Large, 114, and the act of September 8, 1916, c. 463, Title 1, §§ 1, 2, 39 U. S. Sts. at Large, 756, 757, in neither of which were there any provisions especially relating to gains from such sources. *United States* v. *Phellis*, 257 U. S. 156. *Rockefeller* v. *United States*, 257 U. S. 176. *Cullinan* v. *Walker*, 262 U. S. 134. *Weiss* v. *Stearn*, 265 U. S. 242. *Marr* v. *United States*, 268 U. S. 536. But the revenue act of 1918, and subsequent revenue acts, provided that certain gains and losses resulting from an exchange of stock in the reorganization of a corporation, as defined in these acts, should not be recognized as a present gain or loss. See U. S. C. Title 26, § 112. *Pinellas Ice & Cold Storage Co.* v. *Commissioner of Internal Revenue*, 287 U. S. 462. *John A. Nelson Co.* v. *Helvering*, 296 U. S. 374. *G. & K. Manuf. Co.* v. *Helvering*, 296 U. S. 389. *Minnesota Tea Co.* v. *Helvering*, 302 U. S. 609. *Helvering*

v. *Tex-Penn Oil Co.* 300 U. S. 481.   The aim of these revenue
acts is "to save the taxpayer from an immediate recogni-
tion of a gain, or to intermit the claim of a loss, in certain
transactions where gain or loss may have accrued in a con-
stitutional sense, but where in a popular and economic
sense there has been a mere change in the form of ownership
and the taxpayer has not really 'cashed in' on the theo-
retical gain, or closed out a losing venture."   *Portland Oil
Co.* v. *Commissioner of Internal Revenue,* 109 Fed. (2d)
479, 488.   *Helvering* v. *Watts,* 296 U. S. 387.

A similar change, although based upon a slightly differ-
ent ground, has been made in our first income tax statute,
St. 1916, c. 269, § 5 (c), providing for a tax on gains from
the sale and purchase of intangibles, by so amending said
clause (c) that any gain or loss resulting from an exchange
of stock in the reorganization of a corporation is not to be
determined for the purpose of taxation until the stock-
holder has disposed of the stock and his profit or loss has
been definitely ascertained.

St. 1916, c. 269, § 5 (c), which became G. L. c. 62, § 5 (c),
was amended in the year following the decisions in *Osgood*
v. *Tax Commissioner,* 235 Mass. 88, and *Stone* v. *Tax Com-
missioner,* 235 Mass. 93, by St. 1921, c. 376, and again in
the next year by St. 1922, c. 449, which provided that "If,
in any exchange of shares upon the reorganization of one
or more corporations . . . associations or trusts, the bene-
ficial interest in which is represented by transferable shares,
the new shares received in exchange for the shares sur-
rendered represent the same interest in the same assets,
no gain or loss shall be deemed to accrue from the trans-
action until a sale or further exchange of such new shares
is made."   In substance this provision has since remained
in the statute.   See now G. L. (Ter. Ed.) c. 62, § 5 (c), as
amended by St. 1935, c. 481.   The exchange of the old for
the new shares still constitutes a sale and the transferor
of the old becomes a purchaser of the new shares.   The
value of the new shares at the time of their receipt is no
longer the standard to determine whether a taxable gain
or a deductible loss has occurred.   Under our present stat-

ute, a gain or loss is ascertained by a subsequent sale or exchange of the new shares. The purpose of the statute, as amended, is that the mere receipt of shares representing the same interest in the assets of the corporation or the corpus of the trust, as the case may be, as did the old shares, is not a taxable event, and that the tax is to be imposed and measured by the gain resulting from a sale or exchange of the new shares. *Van Heusen* v. *Commissioner of Corporations & Taxation,* 257 Mass. 488. *Crocker* v. *Commissioner of Corporations & Taxation,* 280 Mass. 238. The exemption from the tax until a gain or loss is actually realized by the sale or exchange of the newly acquired shares does not apply if the new shares give the owner a different interest in the same assets, or an interest in other assets which he did not have as owner of the old shares. In such instances, the receipt of the new shares, if their market value exceeded the cost of those surrendered in exchange, would constitute a taxable gain. *Wellman* v. *Commissioner of Corporations & Taxation,* 289 Mass. 131. *Bryant* v. *Commissioner of Corporations & Taxation,* 291 Mass. 498.

The commissioner contends that the taxpayer received a different interest in the property of the trust by the acquisition of the new shares, and that as the market value of these new shares exceeded what she paid for the old shares, a tax was properly imposed upon this difference in value.

The taxpayer at the time of the reorganization was the owner of one hundred shares of seven per cent cumulative preferred stock and five hundred shares of Class C common shares, and when the reorganization was effected she was the owner of one hundred shares of five per cent cumulative preferred stock, of one hundred seventy-five shares of the new common stock, and of one hundred twelve and one half purchase warrants. The record does not disclose any difference between the rights that the taxpayer had under the old preferred shares and those that she had under the new preferred shares, except, as the name implies, the rate of dividends under the latter was less than under the former. So far as the record indicates there was to be no decrease

in the number of outstanding preferred shares. The reduction in capitalization was to be effected by the reduction in the common shares. Instead of five hundred shares of Class C common stock, she acquired upon the reorganization one hundred seventy-five shares of the new common stock. Here again the record does not show what difference, if any, there was between the new common and the Class C common. It may be that all the outstanding Class C common shares were to be surrendered in exchange for the new common shares in the same ratio as was employed in determining the number of shares of the new common stock issued to the taxpayer. There is no direct finding to this effect, but it would seem to follow from the statement of the board that the new shares that the taxpayer acquired represented the same proportionate interest in the trust that she formerly held. The fact that the old preferred shares were exchanged for the same number of new preferred shares and one hundred shares of the new common stock, and the old common shares for seventy-five shares of new common stock and one hundred twelve and one half warrants, is not controlling in ascertaining the realities of the transaction. Matters of form must not be mistaken for those of substance. *Commissioner of Corporations & Taxation* v. *Second National Bank of Boston*, 308 Mass. 1. The validity of the ultimate finding of the board, that her proportionate ownership was not changed, must be tested by the nature of the thing accomplished rather than by the details in which it was clothed. *Hemenway* v. *Milton*, 217 Mass. 230, 233. *Nicol* v. *Ames*, 173 U. S. 509, 516. *Coolidge* v. *Long*, 282 U. S. 582, 627. *Helvering* v. *Tex-Penn Oil Co.* 300 U. S. 481, 492, 493. *Helvering* v. *F. & R. Lazarus & Co.* 308 U. S. 252, 255.

The actual results of the exchange were that the taxpayer held the same number of preferred shares and a lesser number of common shares, together with the purchase warrants. The other shareholders received similar warrants on the same basis and in the same proportion. The terms and conditions governing the use of these warrants are not shown by the decision of the board. There is no finding of

their cost or value or that the taxpayer used these warrants to subscribe for new shares or that she made any use whatever of them. The receipt of these warrants was not shown to be taxable income. G. L. (Ter. Ed.) c. 62, § 5 (c). See *Allen* v. *Commissioner of Corporations & Taxation*, 272 Mass. 502, and *Madden* v. *Commissioner of Corporations & Taxation*, 280 Mass. 321, in reference to the valuation of rights to subscribe to corporate securities before the statute was amended by St. 1931, c. 435.

All the shares were in the same trust. All the shareholders were treated with equality. Each, it seems, waived the arrears on overdue unpaid dividends and assumed proportionately the common burden imposed by a reduction of the outstanding common shares. So far as the new capital structure is disclosed by the findings of the board, we see nothing to indicate that the position of any shareholder with respect to his respective fractional ownership in the beneficial interest of the assets of the trust was changed by the reorganization. The finding of the board that the new shares represented the same interest in the same assets as was represented by the old shares brings the case within the statutory exemption. This finding rests upon unreported evidence and is not shown to be vitiated by an error of law by anything contained in the decision of the board. Such a finding cannot be disturbed. G. L. (Ter. Ed.) c. 58A, § 13. *Commissioner of Corporations & Taxation* v. *J. G. McCrory Co.* 280 Mass. 273. *Revere* v. *Revere Construction Co.* 285 Mass. 243. *Commissioner of Corporations & Taxation* v. *Ford Motor Co.* 308 Mass. 558.

The decision of the board should have included interest at the rate of six per cent from October 1, 1938, G. L. (Ter. Ed.) c. 58A, § 13. An abatement must be granted for the full amount of the tax and such interest together with the costs of this appeal.

*So ordered.*