MICHAEL L. MADDEN *vs.* STATE TAX COMMISSION.

Suffolk.    January 4, 1956. — March 28, 1956.

Present: QUA, C.J., RONAN, SPALDING, WILLIAMS, & COUNIHAN, JJ.

*Equity Jurisdiction,* Declaratory relief, Tax.    *Declaratory Judgment.*
    *Taxation,* Income tax.    *Corporation,* Consolidation of corporations,
    Exchange of shares.    *Sale,* What constitutes.    *Words,* "Reorganiza-
    tion," "Exchange."

A court of equity might in its discretion entertain a suit under G. L.
    (Ter. Ed.) c. 231A by a stockholder in a corporation for a declaratory
    decree as to whether or not a certain conversion of his stock into stock
    in another corporation was reportable in his Massachusetts income tax
    return for the purpose of computing gain or loss; the provision of § 48
    of the income tax law, G. L. (Ter. Ed.) c. 62, that certain remedies
    under that chapter should be "exclusive" was not a bar to such a
    suit. [737]
A sale within G. L. (Ter. Ed.) c. 62, § 5 (c), as appearing in St. 1935,
    c. 481, § 1, as amended, reportable in a taxpayer's Massachusetts in-
    come tax return resulted upon conversion of his stock in a corporation
    into stock in another corporation representing an interest in the assets
    of both corporations pursuant to a consolidation or merger thereof
    in which the other corporation was the survivor. [738]

BILL IN EQUITY, filed in the Supreme Judicial Court for
the county of Suffolk on March 30, 1955.

The suit was reserved and reported by *Wilkins,* J., with-
out decision.

*Lothrop Withington,* (*Charles C. Worth & Charles E.
Gennert* with him,) for the plaintiff.

*Harris A. Reynolds,* Assistant Attorney General, (*Harry
G. Blazo* with him,) for the defendants.

QUA, C.J.    This is a bill for declaratory relief under G. L.
(Ter. Ed.) c. 231A brought in this court and reserved and
reported by the single justice without decision for determi-
nation by the full court upon the bill, a demurrer, and an
answer and case stated which are operative if the demurrer
is overruled.

The bill alleges that the plaintiff was a holder of common stock in Hollingsworth & Whitney Company, a Massachusetts corporation; that by a two-thirds vote of the stockholders entitled to vote of that corporation and by a similar vote of the stockholders of Scott Paper Company, a Pennsylvania corporation, it was decided to merge the two corporations into one (G. L. [Ter. Ed.] c. 156, § 46D, inserted by St. 1941, c. 514, § 2, as amended; Purdon's Pa. Sts. Anno. Title 15, § 2852–901 to 908), of which Scott Paper Company was to be the surviving corporation; that the necessary articles of consolidation or merger were filed in each jurisdiction; that the requirements of the laws of each were observed; that the basis of conversion of common stock was that one share of Hollingsworth stock was converted into one and four tenths shares of Scott stock; that the defendants have ruled that this conversion of shares is reportable by Massachusetts residents on their State income tax returns for the purpose of computing gain or loss under G. L. (Ter. Ed.) c. 62, § 5 (c), as appearing in St. 1935, c. 481, § 1, and as amended in respects not here material by St. 1954, c. 599, § 1; that the plaintiff believes and avers that the conversion of his shares following the statutory merger was not reportable under said § 5 (c); that the defendants propose to compute a tax against the plaintiff based upon this erroneous ruling and to collect the same; and, upon information and belief, that there are more than one thousand other residents of this Commonwealth who held Hollingsworth stock on the conversion date to whom the defendants propose to apply their erroneous ruling.[1]

The grounds of demurrer in so far as they have not been waived are (1) that the bill does not state a cause of action for declaratory relief, (2) that the plaintiff has not exhausted his administrative remedies under c. 62, and (3) that these remedies are exclusive because of c. 62, § 48.

In the recent case of *Meenes* v. *Goldberg*, 331 Mass. 688, we held that the traditional reluctance of courts of equity

---

[1] The case stated shows that there were in fact seven hundred twenty-five such residents whose stock has been converted.

to intervene in the matter of assessment and collection of taxes did not necessarily preclude declaratory relief under c. 231A. We there cited many recent cases. That decision is in line with present tendencies. See Borchard, Declaratory Judgments (2d ed.) 825. The principal reliance of the defendants is upon c. 62, § 48, which provides that "The remedies provided by sections forty-three to forty-seven, inclusive, shall be exclusive, whether or not the tax is wholly illegal. But the word 'exclusive' in this section shall not be construed to deprive any person of a right of action at law in any federal court."

There seem to us to be two answers to this contention.

(1) The sections to which reference is made in § 48 provide for petition to the commission for abatement of overpayments of assessed taxes (§ 43 as appearing in St. 1954, c. 269) and then for appeal to the Appellate Tax Board. § 45, as most recently amended by St. 1953, c. 654, § 48. In the present case there has been no assessment and there has been no overpayment. The question as to which the bill specifically sets forth an "actual controversy" (c. 231A, § 1) relates only to the present legal duty of the plaintiff in making his return relative to the "conversion" of his stock. Although it is hardly conceivable that a decision now will not affect the ultimate assessment, yet it is true that the plaintiff must first make a return under oath with possible penalties (c. 62, §§ 22, 24, 55, 56[1]) before any question of assessment or abatement arises, and he does not know how to make that return. In the use of declaratory procedure it must not infrequently occur that the declaration of "right, duty, status and other legal relations" (c. 231A, § 1) will affect subsequent procedures, even though they are "exclusive."

(2) A broader and perhaps more satisfactory answer is found in the nature of declaratory relief. The present comprehensive statute (c. 231A) was enacted long after c. 62, § 48, which contains the exclusive remedy provision. The

---

[1] Changes in certain of these sections since the Tercentenary Edition do not affect the pertinence of the references and it is thought unnecessary to mention them.

declaratory judgment law was superimposed upon the existing statute and common law of the Commonwealth. It was intended to create a new and additional remedy either previously unknown or but very slightly used. That it might be expected in some instances to affect existing law is shown by the care taken to provide in § 1 that nothing therein contained should be "construed to authorize the change, extension or alteration of the law regulating the method of obtaining service on, or jurisdiction over, parties or affect their right to trial by jury." In many, if not most, instances in which declaratory judgments might be expected to be entered there were preëxisting remedies which in law were actually as "exclusive" as those referred to in c. 62, § 48, whether or not expressly so designated by statute. Section 9 of the declaratory judgment law provides that the chapter is remedial and that it is to be "liberally construed and administered." Use of this procedure is discretionary, and is subject to the control of this court. C. 231A, § 3. *National Shawmut Bank* v. *Morey,* 320 Mass. 492, 497–498.

We conclude that a bill for declaratory relief may be entertained in the discretion of the court notwithstanding the "exclusive" provision in c. 62, § 48. *Booth* v. *New York,* 268 App. Div. (N. Y.) 502. The remedies referred to in that section still remain as therein provided the "exclusive" remedies available as of right.

It follows that the demurrer must be overruled.

Turning now to the merits, the case stated agrees in general with the factual allegations of the bill and need not be recapitulated here. The question is whether the receipt by the plaintiff of his new Scott stock in exchange for the Hollingsworth stock that he formerly held produced a taxable gain measured by the difference between what he originally paid for his Hollingsworth stock and the value of his new stock within the provisions of G. L. (Ter. Ed.) c. 62, § 5 (c), as appearing in St. 1935, c. 481, § 1, as amended by St. 1954, c. 599, § 1.[1] This subsection imposes a tax of three

---

[1] See now St. 1955, c. 635, § 2.

per cent upon the excess of gains over losses "received by the taxpayer from purchases or sales of intangible personal property." It contains the following provision, "If, in any exchange of shares upon the reorganization of one or more corporations . . . the new shares received in exchange for the shares surrendered represent the same interest in the same assets, no gain or loss shall be deemed to accrue from the transaction until a sale or further exchange of such new shares is made."

· The contentions of the plaintiff are in brief that the conversion of shares upon a statutory merger or consolidation results by operation of law and is not a purchase or sale; that it is not a taxable event; and that the attempt is here made to tax mere paper profits. The plaintiff cites a great many cases, including many dealing with subjects other than taxation, for the purpose of showing that the exchange of shares in a constituent corporation for shares in a merged or consolidated corporation is not a sale or purchase. It cannot be doubted, however, that in general an exchange may be a sale or purchase for tax purposes. *Bryant* v. *Commissioner of Corporations & Taxation*, 291 Mass. 498, 500. See the cases hereinafter cited. And we know of no reason why the Legislature cannot make an exchange, even in the case of a merger, a taxable event, if it so desires. The question here is simply one of the construction of c. 62, § 5 (c); and that construction is materially affected by the wording of the sentence last quoted above. In our opinion there was in this instance a "reorganization of one or more corporations" and an "exchange of shares," and the new shares received by the plaintiff in exchange for the shares surrendered did not "represent the same interest in the same assets," because they represented an interest in the assets of the Scott company as well as an interest in those of the Hollingsworth company. The sentence we have been discussing was inserted in subsection (c) by St. 1922, c. 449, § 1, approved on May 20 of that year. In the case of *Osgood* v. *Tax Commissioner*, 235 Mass. 88, decided in 1920, this court had held that an exchange of stock upon reorganiza-

tion where the new stock represented the same identical assets as the old was a taxable sale. See also the companion case of *Stone* v. *Tax Commissioner*, 235 Mass. 93, decided at the same time, where, however, the stock finally acquired by the taxpayers represented assets in addition to those represented by the taxpayers' original stock. This also was held to be a taxable sale. It is a fair assumption that the statute of 1922 was designed to mitigate what was thought to be a hardship in imposing a tax upon exchanges of stock in consequence of reorganizations, but only to the extent expressed in the 1922 statute; that is to say, where the new shares received represent the same interest in the same assets as the shares formerly held. Later decisions, in so far as they are in point, are consistent with this theory. *Commissioner of Corporations & Taxation* v. *Tousant*, 309 Mass. 84. *De Cordova* v. *Commissioner of Corporations & Taxation*, 314 Mass. 371. *State Tax Commission* v. *Smith*, 331 Mass. 387. See *Marr* v. *United States*, 268 U. S. 536.

But the plaintiff contends that this case is different, because we are here dealing with a merger or consolidation of two corporations into one, and because, as he says, as soon as the requisite number of stockholders of each corporation has voted in favor of the merger his exchange of stock is accomplished by operation of law and ceases to be voluntary and so lacks the elements of a sale. Nevertheless the fact remains that the stockholder has given up one thing and in exchange for it has received something different representing different assets. He was not obliged to do this, since c. 156, § 46E, inserted by St. 1941, c. 514, § 2, gives any stockholder a right to object to the merger and to receive payment for his stock at a valuation to be fixed as provided in § 46. Even if there is still some element of compulsion in this it is no more than a consequence of the legislative power over corporations to which the plaintiff submitted when he acquired his stock. See G. L. (Ter. Ed.) c. 155, § 3. It has been held in various cases that a forced or involuntary sale is none the less a sale for tax purposes. *Helvering* v. *Hammel*, 311 U. S. 504, 510. *Electro-Chemical*

*Engraving Co. Inc.* v. *Commissioner of Internal Revenue,* 311 U. S. 513. *Welch* v. *Street,* 116 Fed. (2d) 953, 956. *Commissioner of Internal Revenue* v. *Coggan,* 119 Fed. (2d) 504. It is difficult to see why this should not be so.

Whatever result might be reached in other jurisdictions that have taken a more liberal attitude toward the taxation of exchanges of stock we must conclude that the law as developed in this Commonwealth from the beginning of income taxation as shown by the cases herein cited considers this transaction as more than a mere paper transaction and as a sale in which the gain has been realized.

It must not be thought that because we have entertained this bill we are likely to permit taxpayers to by-pass the Appellate Tax Board in other cases by bills for declaratory relief. In addition to reasons already stated we have been influenced in this instance by the novelty of the question in this Commonwealth and by the large number of persons who are interested in its solution.

An interlocutory decree is to be entered overruling the demurrer, and a final decree is to be entered declaring that the plaintiff is required to make return of the transfer of his stock as a sale.

*So ordered.*