BOSTON SAFE DEPOSIT AND TRUST COMPANY & others, trustees, *vs.* STATE TAX COMMISSION.

Suffolk.    November 5, 1959. — January 8, 1960.

Present: WILKINS, C.J., SPALDING, WILLIAMS, COUNIHAN, & CUTTER, JJ.

*Taxation,* Income tax. *Corporation,* Reorganization, Exchange of shares.

A reorganization of a corporation's stock, whereby one share of old nonredeemable, nonconvertible, noncumulative, voting first preferred stock was exchanged for four shares of new redeemable, convertible, cumulative, nonvoting preferred stock, and one share of old nonredeemable, nonconvertible, noncumulative, voting second preferred stock was exchanged for two shares of the new preferred stock and two shares of new common stock, and one share of old common stock was exchanged for four shares of the new common stock, with substantial variations between the old classes of stock and the new with respect to dividend, liquidation, and subscription rights, where it appeared that the classes of stock held by various stockholders differed, warranted conclusions by the Appellate Tax Board that "the position of each shareholder with respect to his respective fractional ownership in the beneficial interest of the assets of the corporation was changed by the reorganization," and that the receipt of new preferred and new common stock by a stockholder in place of old second preferred and old common stock previously held by him constituted a taxable transaction under G. L. c. 62, § 5 (c), as amended through St. 1954, c. 599, § 1.

APPEAL from a decision by the Appellate Tax Board.

*Tudor Gardiner,* for the taxpayer.

*Roy F. Teixeira,* Assistant Attorney General, (*George Luftman* with him,) for the State Tax Commission.

CUTTER, J.   This is an appeal by testamentary trustees from the decision of the Appellate Tax Board refusing abatement of income taxes assessed, pursuant to G. L. c. 62, § 5 (c), as in effect on May 11, 1955, upon an exchange of shares in Pacific Coast Company (Pacific), a New Jersey corporation.   Pacific made adjustments[1] of its shares as of May 11, 1955.   See summary on pages 252–253.   Prior to and after the reclassification, the trustees owned shares, each having an adjusted cost basis for Massachusetts income tax purposes of zero, as follows:

| *Before exchange* | | *After exchange* | |
|---|---|---|---|
| Second preferred | | Five per cent cumulative | |
| (stated value $10) | 135 shares | preferred ($25 par value) | 270 shares |
| Common ($10 par) | 900 shares | New common stock | |
| | | ($1 par value) | 3870 shares |

The trustees continued in possession of their old share certificates after the adoption of the readjustment and re-classification plan, "there being no penalty . . . [for] failure to surrender the old . . . certificates."   They received, however, their 1955 dividends on time on the basis of the new stock and exercised at the 1956 annual meeting of Pacific the voting rights accorded to them in the same manner as though they had surrendered their old certifi-

---

[1] The adjustments gave (a) for each outstanding share of old first preferred stock, four shares of new five per cent cumulative preferred stock, (b) for each outstanding share of old second preferred stock, two shares of new common stock and two shares of new five per cent cumulative preferred stock and (c) for each outstanding old common share, four shares of new common stock.   The old and new capital structures were:

| | Before Exchange | | After Exchange | |
|---|---|---|---|---|
| *Preferred Stock* | | | | |
| First preferred (old) | 15,250 sh. — | $152,500 | none | |
| Second preferred (old) | 40,000 sh. — | 400,000 | none | |
| Five per cent | | | | |
| cumulative     (new) | none | | 141,000 sh. — | $3,525,000 |
| *Common Stock* | | | | |
| $10 par (old) | 70,000 sh. — | 700,000 | none · | |
| $1 par   (new) | none | | 360,000 sh. — | 360,000 |
| | | $1,252,500 | | $3,885,000 |
| Capital surplus — | | 3,344,270 | | 711,770 |
| Earned surplus — | | 3,251,457 | | 3,251,457 |
| | | $7,848,227 | | $7,848,227 |

SUMMARY DESCRIPTION OF THE SEVERAL CLASSES OF PACIFIC'S OLD AND NEW SHARES OF STOCK.

| | Old Capital Stock | | | New Capital Stock | |
| --- | --- | --- | --- | --- | --- |
| | Common | Second Pfd. | First Pfd. | Common | 5% Pfd. |
| Par Value | $10.00 | None | None | $1.00 | $25.00 |
| Dividend Rights | Junior to First Pfd. and Second Pfd. After $4 dividend to Common Second Pfd. participates with Common* | $4 non-cumulative preference (junior to First Pfd. in annual earnings). Participates with Common after $4 to Common* | $5 non-cumulative preference in annual earnings* | Junior to 5% Pfd. | 5% fully cumulative |
| Redemption Provisions | Not redeemable | Not redeemable | Not redeemable | Not redeemable | Redeemable at par plus dividends in arrears plus premium of $2.50 if before 4/1/58 or $1.25 if before 4/1/61 |
| Conversion Rights | Not convertible | Not convertible | Not convertible | Not convertible | Convertible into 1 share of Common until March 31, 1965 |

Boston Safe Deposit & Trust Co. *v.* State Tax Commission.

| | | | | | |
|---|---|---|---|---|---|
| Voting Rights | 1 vote per share without regard to class | 1 vote per share without regard to class | 1 vote per share without regard to class | 1 vote per share | No voting rights except 2 Directors may elect if 6 or more quarterly dividends are in default |
| Liquidation Rights | Ratably, share for share with both classes of Preferred* | Ratably, share for share with Common and First Pfd.* | Ratably, share for share with Common and Second Pfd.* | Junior to 5% Pfd. | Par value plus dividend in arrears before any distribution on Common |
| Preëmptive Rights to subscribe to new issues of stock | Yes | Yes | Yes | No | No |

*Each of the three classes of old capital stock had inchoate dividend rights, if earnings of past years should be distributed, amounting to $25.27 for the first preferred stock, $25.25 for the second preferred stock, and $15.17 for the common. These inchoate rights appear to have disappeared in the reclassification.

cates.  Immediately after the vote of May 11, 1955, the new shares were listed for trading on the New York Stock Exchange and the old shares were withdrawn.

By a letter dated April 6, 1956, the trustees were advised by the State tax commission that the exchanges constituted taxable transactions under G. L. c. 62, § 5 (c), as in force in 1955.  Additional taxes were assessed accordingly, the value of the new shares received being determined at the mean between the high and the low for such shares as shown by sales on the New York Stock Exchange on Monday, May 16, 1955.[2]  An application for abatement of the additional taxes was denied.  The trustees appealed to the Appellate Tax Board which found the facts to be as set forth in an agreed statement.  The facts stated above are as set forth in the board's findings, including the agreed statement incorporated therein by reference.  The board denied various requests for rulings, and rendered a decision for the State tax commission.  The trustees have appealed.

General Laws c. 62, § 5, as then most recently amended by St. 1954, c. 599, § 1, was in effect on May 11, 1955.[3] So far as here pertinent, it reads: "Section 5.  Income of the following classes received by any inhabitant of the commonwealth during the preceding calendar year shall be taxed as follows: [as appearing in G. L. (Ter. Ed.) c. 62] . . . (c) The excess of the gains over the losses received by the taxpayer from purchases or sales of intangible personal property . . . shall be taxed at the rate of three per

---

[2] The range of prices at which 1,690 shares of new five per cent cumulative preferred stock sold during the period from May 13 to May 20, 1955, was a low of 21¾ on May 13 to a high of 25 on May 19.  During the period May 16, 1955, to May 20, 7,650 shares of new common stock sold within a range of a low of 16¼ on May 16 to a high of 22½ on May 20.

[3] The section thereafter was amended by St. 1955, c. 635, § 2, St. 1956, c. 607, § 1, St. 1957, c. 540, § 1, and St. 1959, c. 556, § 2.  The last mentioned amendment in general purports to make recognition of gain or loss under § 5 (c) dependent upon whether "gain or loss is recognizable upon such exchange under the applicable provisions of the federal internal revenue code of" 1954. By § 4 of the 1959 statute it was to become effective with respect to taxable years beginning after December 31, 1958.  The 1959 amendment, which we need not interpret, obviously materially alters the rule applied in the present case and appears to be consistent with a recommendation of the State tax commission, 1958 House Doc. No. 99, pp. 8–9.  See 1959 Senate Bill No. 420; 1959 House Bill No. 917.

cent per annum[4] . . . [as appearing in St. 1935, c. 481, § 1]. . . . If, in any exchange of shares upon the reorganization of one or more corporations . . . the new shares received in exchange for the shares surrendered represent the same interest in the same assets, no gain or loss shall be deemed to accrue from the transaction until a sale or further exchange of such new shares is made . . . [inserted by St. 1922, c. 449, § 1]." The question for decision is whether under the sentence last quoted (hereinafter referred to as the 1922 amendment) the reclassification of Pacific's shares represented an occasion upon which gain to the trustees could be recognized for the purposes of § 5 (c) and taxed.

In *Tax Commr.* v. *Putnam*, 227 Mass. 522, 524–532, this court sustained, under art. 44 of the Amendments to the Constitution of the Commonwealth, an income tax upon gains from purchases and sales of intangible personal property. As the court said (see p. 530), "no question . . . [was] raised [or decided] . . . as to an attempt to tax gains on the value of property which have not been realized by sale and which would be known in common speech as mere paper profits."

In *Osgood* v. *Tax Commr.* 235 Mass. 88, this court considered transactions by which a Maine corporation was reincorporated in Massachusetts. For each share of preferred stock of the Maine corporation, the holders received one and one quarter shares of common stock of the Massachusetts corporation and each holder of a common share of the Maine corporation received two and one half shares of common stock of the Massachusetts corporation. The Massachusetts corporation took over all the assets of the old company and continued the business (at p. 89) "without outward indication of change." This was treated as a taxable sale for purposes of § 5 (c). It was said (at p. 91), "The stock obtained . . . through exchange was different

---

[4] The additional tax imposed by St. 1955, c. 707, § 3, and other additions to the basic tax imposed by § 5 (c) are not material to the consideration of this case.

in kind and not merely in degree from that which . . . [the taxpayer] owned before. It was not the same corporation and the stock itself was different in nature. A change of investment had been made both in name and in essence." See also *Stone* v. *Tax Commr.* 235 Mass. 93, 95.

Following the broad holdings in the *Osgood* and *Stone* cases, the 1922 amendment was added to § 5 (c) by St. 1922, c. 449, § 1. The act originated as 1922 Senate Bill No. 265 which on its face showed that its introduction had been inspired by the more liberal reorganization provisions of the Federal Revenue Act of 1921, § 202 (c); 42 Stat. 227, 229–230, one of the predecessors of §§ 351, 354, and 368 of the Internal Revenue Code of 1954. The bill in changed form, 1922 Senate Bill No. 446, was enacted in its much more restrictive present terms. The original bill, to a considerable extent but by no means completely, would have adopted the then prevailing Federal rule with respect to recognition of gain or loss on exchanges of shares in reorganizations. The 1922 Legislature thus deliberately rejected recognition of gain or loss upon the basis of more lenient Federal tax principles.

The purpose of the 1922 amendment was first explained in *Van Heusen* v. *Commissioner of Corps. & Taxn.* 257 Mass. 488, 490, where it was said: "The intent of the Legislature is that where there is really only a change in the form of the representation of the same assets, no income accrues and no gain or loss takes place until a sale or exchange of the newly acquired property fixes it with a value and settles whether there has been loss or gain." The 1922 amendment was first applied to a recapitalization of a single corporate or quasi corporate entity in *Commissioner of Corps. & Taxn.* v. *Tousant,* 309 Mass. 84, 88–90, where this court did not disturb a conclusion of the Appellate Tax Board, based upon unreported evidence, that new shares in a trust received upon a reorganization represented the same interest in the same assets as the old shares surrendered. There a taxpayer surrendered one hundred shares of seven per cent cumulative preferred and five hundred common shares in

return for one hundred shares of five per cent cumulative preferred stock, one hundred seventy-five shares of new common stock, and one hundred twelve and one half stock purchase warrants. This court pointed out that the record failed to show facts which upset the "validity of the ultimate finding of the board, that . . . [the taxpayer's] proportionate ownership was not changed." The *Tousant* case must be taken to rest (see p. 90) upon the conclusion of the board "that the new shares represented the same interest in the same assets as . . . [did] the old shares," for (at p. 88) the court said, "The exemption from the tax until a gain or loss is actually realized by the sale or exchange of the newly acquired shares does not apply if the new shares give the owner a different interest in the same assets, or an interest in other assets which he did not have as owner of the old shares. In such instances, the receipt of the new shares, if their market value exceeded the cost of those surrendered in exchange, would constitute a taxable gain." The *Tousant* case (cf. holding in *Boston Symphony Orchestra, Inc.* v. *Assessors of Boston,* 294 Mass. 248, 249, 257, as explained in *Boxer* v. *Boston Symphony Orchestra, Inc.* 339 Mass. 369, 372–373) is not authority for the position that the 1922 amendment means anything differing from what its language imports. See *De Cordova* v. *Commissioner of Corps. & Taxn.* 314 Mass. 371, 372–374, where (at p. 374) weight was given to the board's finding "that the new shares did not represent the same interest in the same assets as did the old shares"; *Madden* v. *State Tax Commn.* 333 Mass. 734, 737–740.[5] Cf. *State Tax Commn.* v. *Smith,* 331 Mass. 387, 390.

Applying the language of the 1922 amendment to the present facts, the Appellate Tax Board was warranted in concluding that "the position of each shareholder with re-

---

[5] Other cases dealing with the scope of § 5 (c) are *Boston Safe Deposit & Trust Co.* v. *Commissioner of Corps. & Taxn.* 273 Mass. 187, 194, *Commissioner of Corps. & Taxn.* v. *Hornblower,* 278 Mass. 557, 560–563, and *Wellman* v. *Commissioner of Corps. & Taxn.* 289 Mass. 131, 139. See Nichols, Taxation in Massachusetts (3d ed.) 492–496; Barrett and Bailey, Income Taxes, § 419 (and 1959 supp.). See also *Commissioner of Corps. & Taxn.* v. *Fopiano,* 324 Mass. 304, 307–308.

spect to his respective fractional ownership in the beneficial interest of the assets of the corporation was changed by the reorganization." The material differences in the shareholders' rights represented by the stock received from the rights represented by their old stock are amply set out above in the comparative summary of all these rights. The substitution in part of redeemable, convertible, cumulative, nonvoting preferred shares for nonredeemable, nonconvertible, noncumulative, voting preferred shares is in itself a significant variation sufficient, in connection with other circumstances shown, to constitute not only a taxable event but a difference in interest. This is a case where Federal income tax precedents are of little assistance in dealing with problems arising under the different provisions of G. L. c. 62. Cf. *Allen* v. *State Tax Commn.* 337 Mass. 502, 506.

The trustees requested, and the board refused, rulings in effect that, where all shareholders of a corporation exchange old shares of several classes representing the total equitable ownership of the corporation for new shares of different classifications representing the total equitable ownership, then the new shares represent the same interest in the same assets. The trustees, prior to the reclassification, held only old second preferred shares and old common shares with appurtenant inchoate rights in dividends. They received new cumulative preferred and new common shares. They held no old first preferred shares. The record discloses that some stockholders prior to the reclassification held only common shares, that at least one held common and first preferred shares, that at least one held only first and second preferred shares, and that at least one other, like the trustees, held common and second preferred shares. Doubtless every effort was made to effect a fair reclassification. Nevertheless, no demonstration has been made (and in view of the variations in prior holdings and the significant alterations in the privileges of the several classes of stock, possibly none could be made) that after the reclassification each stockholder had precisely the same proportionate interest in the same assets as before.

Within individual classes of old stock, there was no alteration in the position of any shareholder as compared with any other shareholder. In the treatment of classes of old stock as compared with each other the variations, although not great, cannot be said to be insubstantial. Old preferred stockholders of each class lost valuable rights for the benefit of the common shareholders, while gaining other rights at their expense. Conversely, the common stockholders gained valuable rights at the expense of the preferred shareholders, while losing others.

In net effect, we assume that little change was effected in the relative rights of shareholders and classes of shareholders and that any changes were changes in degree and not of major import. If any great alteration of relative rights had been proposed, the readjustment would hardly have been approved by at least eighty-seven per cent of the outstanding shares of each class of stock. We recognize also that certain of the formal changes here appear to be no more substantial than those changes which appeared in the original record in the *Tousant* case, and, in effect, were regarded there as without significance under the 1922 amendment. Nevertheless, we think that the changed bundle of rights of each class of old shareholders cannot be said, after the reclassification, to represent the same interest in the same assets as the aggregate of rights held by that class before the reclassification.

Two of the requested rulings did not state as the premise of the ruling that each shareholder retained the same proportionate part of the total equitable interest in the corporation which such stockholder previously had. These two requested rulings thus were not consistent with the language of the 1922 amendment. Although requested ruling numbered 2 was stated on this premise, it was inapplicable to the facts shown by the record. The opinion of the board amply shows that to those facts it applied correct principles of law.

There is no merit to the suggestion that this exchange was not a taxable event in connection with which gain or loss could properly be recognized as income under art. 44 of the

Amendments to the Constitution of the Commonwealth. See *Madden* v. *State Tax Commn.* 333 Mass. 734, 738. This was an exchange of intangible personal property and not an attempt to tax unrealized paper profits. See *Bryant* v. *Commissioner of Corps. & Taxn.* 291 Mass. 498, 500-501. Cf. *Bingham* v. *Commissioner of Corps. & Taxn.* 249 Mass. 79, 81.

The decision of the Appellate Tax Board for the State tax commission is to stand. The State tax commission is to have costs of the appeal to this court.

*So ordered.*